JOHN V. FARWELL & COMPANY ET AL. V. CHARLES KLOMAN ET AL.

FILED JUNE 18, 1895.   No. 5796.

Sales: FRAUD OF PURCHASER: RESCISSION: VOLUNTARY ASSIGN-MENTS: LIEN ON PROPERTY IN HANDS OF ASSIGNEE: EQUITY: TRUSTS: PRINCIPAL AND AGENT.   A wholesale merchant sold goods on credit, induced to do so by the fraud of his vendee.   The latter disposed of the goods for money and other property, but. no particular property remaining in his hands could be identified as having been purchased with the fraudulently acquired property.   The vendee made a general assignment for the benefit of his creditors.   The wholesale merchant discovered the fraud practiced upon him, rescinded the contract of sale, and filed a bill in equity, praying that the entire estate of the insolvent vendee might be declared a trust fund in the hands of his assignee, of which the wholesale merchant should be the beneficiary, and that he be decreed a first lien upon all said estate to secure the amount due him from his vendee for the property so fraudulently acquired.   *Held*, (1) That the relation existing between the wholesale merchant and his vendee at the time of the sale of the goods was that of an ordinary debtor and creditor, not that of principal and agent; (2) that the original

contract of sale, although induced by fraud, was not absolutely void, but voidable at the election of the vendor within a reasonable time after discovering the fraud; (3) that the vendor, having discovered the fraud and rescinded the contract of sale within a reasonable time, might replevy the goods parted with; (4) that the goods having been disposed of by the fraudulent vendee, a court of equity would award the vendor any particular property, or a lien thereon, which could be identified as having been purchased solely with the property fraudulently acquired by the vendee; (5) but equity would not decree the entire estate of the insolvent vendee a trust fund, of which the defrauded vendor was the beneficiary, and give him a lien on such estate for the amount due him from his vendee.

ERROR from the district court of Custer county.   Tried below before HARRISON, J.

The opinion contains a statement of the case.

*Tenney, Church & Coffeen* and *Harwood, Ames & Kelly*, for plaintiffs in error:

The contention of plaintiffs is that by reason of the facts recited in the petition, all of Cline's property, including his stock in trade, real estate, notes, and book accounts, became impressed with a trust in favor of plaintiffs for the value of the goods thus fraudulently obtained; that the assignee took them subject to that trust, and that plaintiffs are entitled to a preferential lien upon the whole fund for the amount of such value. (Perry, Trusts, secs. 835, 836, 838; *Whitecomb v. Jacob*, 1 Salk. [Eng.], 161; *Miller v. Race*, 1 Burr. [Eng.] 452; *Docker v. Somes*, 2 M. & K. [Eng.], 655; *Pennell v. Deffell*, 4 De Gex, M. & G. [Eng.], 372; *Murray v. Pinkett*, 12 Cl. & Fin. [Eng.], 764; *Knatchbull v. Hallett*, 13 L. R., Ch. Div. [Eng.], 696; *Ex parte Cook*, 4 L. R., Ch. Div. [Eng.], 123; *Dow v. Berry*, 18 Fed. Rep., 121; *Frelinghuysen v. Nugent*, 36 Fed. Rep., 239; *Cook v. Tullis*, 18 Wall. [U. S.], 332; *Central Nat. Bank v. Connecticut Ins. Co.*, 104 U. S., 54; *Florida Land & Improvement Co. v. Merrill*, 52 Fed. Rep., 77; *Clapp v.*

*Emery*, 98 Ill., 523; *First Nat. Bank of Elgin v. Schween*, 127 Ill., 573; *King v. Hamilton*, 16 Ill., 190; *Peak v. Ellicott*, 1 Pac. Rep. [Kan.], 499; *Merket v. Smith*, 5 Pac. Rep. [Kan.], 394; *Continental Nat. Bank v. Weems*, 6 S. W. Rep. [Tex.], 802; *People v. Dansville Bank*, 39 Hun [N. Y.], 187; *People v. Rochester City Bank*, 96 N. Y., 32; *Newton v. Porter*, 69 N. Y., 133; *Cavin v. Gleason*, 105 N. Y., 256; *New York & Brooklyn Ferry Co. v. Moore*, 18 Abb. New Cas. [N. Y.], 106; *Importers & Traders Bank v. Peters*, 25 N. E. Rep. [N. Y.], 319; *Hooley v. Gieve*, 9 Abb. New Cas. [N. Y.], 8; *Bresnihan v. Sheehan*, 125 Mass., 11; *Englar v. Offutt*, 16 Atl. Rep. [Ind.], 497; *McLeod v. Evans*, 66 Wis., 401; *Francis v. Evans*, 33 N. W. Rep. [Wis.], 93; *Bowers v. Evans*, 36 N. W. Rep. [Wis.], 629; *Lee v. Simmons*, 27 N. W. Rep. [Wis.], 174; *Harrison v. Smith*, 83 Mo., 210; *Stoller v. Coates*, 88 Mo., 514; *Snorgrass v. Moore*, 30 Mo. App., 232; *Independent District of Boyer v. King*, 45 N. W. Rep. [Ia.], 908; *Davenport Plow Co. v. Lamp*, 45 N. W. Rep. [Ia.], 1049; *Bunton v. King*, 45 N. W. Rep. [Ia.], 1050; *Third Nat. Bank of St. Paul v. Stillwater Gas Co.*, 30 N. W. Rep. [Minn.], 440; *Brocchus v. Morgan*, 5 Cent. L. J. [Tenn.], 53; *Leland v. Collver*, 34 Mich., 418; *Carter v. Lipsey*, 70 Ga., 417; *Farmers & Merchants Nat. Bank v. King*, 57 Pa. St., 202; *Sadler's Appeal*, 87 Pa. St., 154; *Greene v. Haskell*, 5 R. I., 456; *First Nat. Bank v. Hummell*, 23 Pac. Rep. [Col.], 986; *Jewett v. Dronger*, 30 N. J. Eq., 291; *Farmers & Traders Bank v. Kimball Milling Co.*, 47 N. W. Rep. [S. Dak.], 402; *Cogswell v. Griffith*, 23 Neb., 344; *Wilson v. Coburn*, 35 Neb., 530; *Taylor v. Plumer*, 3 M. & Sel. [Eng.], 574; *Barnard v. Campbell*, 65 Barb. [N. Y.], 289; *Hodgeden v. Hubbard*, 18 Vt., 504; *Amer v. Hightower*, 11 Pac. Rep. [Cal.], 697; *Preston v. Spaulding*, 120 Ill., 228; *Farwell v. Hanchett*, 120 Ill., 577; *Masson v. Bovet*, 1 Den. [N. Y.], 69; *Hammond v. Pennock*, 61 N. Y., 145; *Guckenheimer v. Angevine*, 81 N. Y., 394.)

Where one has been fraudulently induced to enter into any contract or agreement under which he parts with the possession of his property to the wrong-doer, even although the apparent title accompanies the possession, he may, on discovery of the fraud, if the property still remains in specie and distinguishable in the hands of the wrong-doer, rescind or disaffirm the contract and retake the property by replevin or other suitable means or process. (Wells, Replevin, secs. 318, 319; *Kellogg v. Turpie*, 93 Ill., 265; *Beach v. Schmultz*, 20 Ill., 185; *Diversey v. Johnson*, 93 Ill., 547; *First Nat. Bank v. Schween*, 127 Ill., 573.)

If one charged with the custody of money or other personal property of another wrongfully intermingles it with his own so that all which is certainly known respecting its identity, is that it forms a part of a mass of similar property still in the hands of the wrong-doer, the law will award the party wronged the possession of the whole mass, leaving the wrong-doer to identify and reclaim his own if he can.

If the wrong-doer has not only intermingled the property with his own, but has converted or transmuted the general mass into other property, whether by one or many successive transmutations, so that all which is certainly known respecting the original is that it has contributed to produce the fund or other property then in the hands of the wrong-doer, equity, more lenient than the law, will impose upon such resulting product a charge or lien for an amount sufficient to reimburse the party wronged. (*Harford v. Lloyd*, 20 Beav. [Eng.], 310; *Long v. Majestre*, 1 Johns. Ch. [N.Y.], 305; *Wallace v. Duffield*, 2 S. & R. [Pa.], 521; *Davenport Plow Co. v. Lamp*, 45 N. W. Rep. [Ia.], 1049; *Bunton v. King*, 45 N. W. Rep. [Ia.], 1050; *Dow v. Berry*, 18 Fed. Rep., 121; *Wells v. Stout*, 38 Fed. Rep., 807; *Voight v. Lewis*, 9 Chicago Legal News [Pa.], 65; *Thompson v. Perkins*, 3 Mason [U. S. C. C.], 232; *Cragie v. Hadley*, 99 N. Y., 131; *Smith v. Combs*, 24 Atl. Rep. [N. J.], 9.)

*Darnall & Kirkpatrick, contra,* cited : *School Trustees
v. Kirwin,* 25 Ill., 73 ; *Goldthwaite v. Ellison,* 12 So. Rep.
[Ala.], 812; *Preston v. Spaulding,* 120 Ill., 228 ; *Philadel-
phia Nat. Bank v. Dowd,* 38 Fed. Rep., 172 ; *Wilson v.
Coburn,* 35 Neb., 530 ; *Union Nat. Bank.v. Goetz,* 27 N.
E. Rep. [Ill.], 907 ; *Slater v. Oriental Mills,* 27 Atl. Rep.
[R. I.], 443 ; *Monotuck Silk Co. v. Flanders,* 58 N. W.
Rep. [Wis.], 383.

RAGAN, C.

On and for three years prior to January, 1890, John V.
Farwell & Co. (hereinafter called "Farwell & Co.") were
wholesale merchants domiciled and doing business in the
city of Chicago, in the state of Illinois, and W. H. Cline
was a retail merchant resident and doing business in the
city of Broken Bow, Nebraska.    Farwell & Co. brought
this suit in equity in the district court of Custer county
against Charles Kloman, the assignee of said Cline.    Far-
well & Co., in their petition, alleged that for three years
prior to January, 1890, they had been in the habit of sell-
ing goods on credit to Cline; that on January 31, 1890,
Cline made a statement in writing to them, Farwell & Co.,
setting forth his assets and liabilities, representing to them
that he was at that time possessed of property beyond all his
debts of the value of $16,000; that Farwell & Co., believ-
ing this statement to be true, and relying thereon, on the
27th of June, 1890, and at divers times between that date
and November 20, 1890, sold and delivered merchandise on
credit to Cline to the extent of $8,500; that on the 10th of
January, 1891, Cline made an assignment, under the stat-
ute of Nebraska, for the benefit of his creditors; that said
Charles Kloman was the assignee of said Cline; that the
inventoried value of the estate turned over by said Cline
to his said assignee was $29,000 ; that said assets consisted
of merchandise, real estate, notes, and book accounts, and

that his scheduled liabilities were about $60,000 ; that the statement made by Cline to them, Farwell & Co., on January 31, 1890, was false, and known by Cline to be false; that Cline, at the time he made the statement, was insolvent; that in selling said goods upon credit to Cline, Farwell & Co. relied entirely upon the truth of the statement made by him, and which statement Cline made for the purpose of obtaining credit; that only a very small portion of the goods, if any, which Farwell & Co. sold to Cline between June and November, 1890, now remain in the possession of Cline's assignee; that if any of said goods now remain they are in broken lots and cut pieces and so mixed and confused with goods of a like character that their distinct identity cannot be ascertained; that Cline, prior to the time he made an assignment, had sold all or nearly all the goods purchased of Farwell & Co. and invested the proceeds thereof either in real estate or other goods or in paying for goods previously bought by him and now on hand, or said proceeds are now represented by outstanding notes and accounts due him ; that by reason of the fraud of Cline in procuring and in confusing said goods he never acquired any valid right or title to the same or to the proceeds thereof as against Farwell & Co. ; that about the 4th of February, 1891, they, Farwell & Co., discovered for the first time that the statement made to them by Cline was false, and thereupon they at once elected to and did rescind the contract of sale of said goods to him ; that a large number of creditors of Cline have filed their claims with said assignee, the amount of said claims greatly exceeding in amount the value of Cline's estate. The prayer of the petition was for a decree that Cline held the property which he purchased and the proceeds thereof in trust for Farwell & Co., and that they might be decreed to have a first lien upon the entire estate of Cline to secure the amount due them. The district court sustained a general demurrer to this petition, and Farwell

& Co. refusing to plead further, the petition was dismissed; and to reverse this order they have prosecuted to this court a petition in error.

The case amounts to this: A vendor of merchandise parts with the title and possession of his goods on credit to his vendee, induced to do so by the fraud of the latter. The vendee disposes of the fraudulently acquired property for money and other property, but no particular property remaining in the hands of the vendee can be identified as having been purchased with the property fraudulently acquired. The vendee makes a general assignment for the benefit of his creditors. The vendor discovers the fraud practiced upon him by the vendee, rescinds the contract of sale, and asks a court of equity to decree that the property which the vendee fraudulently acquired and its proceeds is a trust fund in his hands, of which the vendor is the beneficiary, though the identical property fraudulently acquired has been by the vendee disposed of, and the identity of the property acquired by the vendee with the fraudulently acquired property or its proceeds cannot be ascertained, and that the vendor be given a first lien upon the entire estate of his vendee to secure the amount due for the property fraudulently parted with. It is not doubted that where goods are sold upon credit induced by the fraudulent representations of the vendee, the vendor may rescind the sale upon the discovery of the fraud and replevy the goods. (*Tootle v. First Nat. Bank of Chadron*, 34 Neb., 863; *McKinney v. First Nat. Bank of Chadron*, 36 Neb., 629.) And if the identical property cannot be found by the officer, the action will proceed as one for damages, and a judgment for the value of the goods fraudulently obtained would be rendered in favor of the vendor. But this doctrine does not proceed upon the theory that the original contract of sale, although induced by fraud, was absolutely void, but merely voidable at the election of the vendor within a reasonable time after discovering the fraud. In

the case at bar, Farwell & Co., after discovering that Cline
had obtained their goods by fraud, had the right to rescind
the contract of sale within a reasonable time and to replevy
the goods parted with; and it may be that a court of
equity, a fraud being established, would give to Farwell &
Co. any particular property, or a lien thereon, which could
be clearly shown to have been purchased solely with the
proceeds of the property fraudulently acquired by Cline
from them. But does it follow, because Cline obtained
goods from Farwell & Co. by fraud, that a court of equity
will give them the entire estate of Cline, or a lien thereon,
when it appears that such estate was not entirely acquired
with the property or its proceeds fraudulently acquired
from them?

Counsel for Farwell & Co., in their argument here, say :
" The contention of plaintiffs is that by reason of the facts
recited in the petition, all of Cline's property, including
his stock in trade, notes, and book accounts, became im-
pressed with a trust in favor of plaintiffs for the value of
the goods thus fraudulently obtained; that the assignee
took them subject to that trust, and that plaintiffs are en-
titled to a preferential lien upon the whole fund for the
amount of such value." To support this contention coun-
sel have furnished us an able and ingenious argument and
cited us to a large number of authorities. These authori-
ties we do not regard as in point; and if any authority
cited supports the contention of counsel, with all due re-
spect, we decline to follow it. Among the authorities is
*Sherwood v. Central Michigan Savings Bank*, 61 N. W.
Rep., 352, in which the supreme court of Michigan held,
where a mortgagee, who was also a depositor in a bank,
gives the bank a mortgage for collection with instructions
not to place the amount collected to his credit but to notify
him of the collections, as he has a place for it, the money,
when collected, belongs to the mortgagee and is held for
him in trust by the bank. It is the duty of the bank

under such circumstances to collect and pay over to the
mortgagee the money, and in doing so it acts as his agent.
If it takes checks in payment, the money received upon such
checks belongs to the mortgagee, notwithstanding it may
be mingled with other money belonging to the bank.
Where in such a case the money of the mortgagee is min-
gled by the bank with its funds, he has a lien upon the
entire fund for the amount belonging to him, and the law
presumes that the trust fund remains intact so long as the
entire fund is not reduced below the amount of the trust
fund.    In this case the mortgagee claimed a preferential
lien upon the entire assets of the insolvent bank, and the
court awarded it to him.    A similar rule was announced
by this court in *State v. State Bank of Wahoo*, 42 Neb.,
896.    These authorities have no application to the facts of
the case at bar.    In the case cited from Michigan, and in
the Wahoo bank case, the relation of debtor and cred-
itor, or banker and depositor, never existed between the
bank and the claimant of a preferred lien, but rather the
relation of principal and agent.    In other words, it was
always a trust fund and was by the trustee misapplied.    In
the case at bar the relation between Farwell & Co. and Cline
at the time the former parted with their goods was that of
vendor and vendee.    Farwell & Co. did not put these
goods or any part of them in the hands of Cline as their
trustee or agent.    True it is that Cline having obtained the
goods fraudulently and Farwell & Co. having ascertained
the fraud and rescinded the contract of sale within reason-
able time, from that moment Cline held the identical goods
which he had purchased as Farwell & Co.'s trustee, and
these goods they might retake or reclaim ; and any specific
property in Cline's hands which he had acquired with the
goods fraudulently obtained from Farwell & Co. a court of
equity might decree theirs, held in trust by Cline.    But in
the case at bar the goods fraudulently obtained of Farwell
& Co. by Cline have been disposed of, and it is averred

in the petition that no particular part of his estate can
be identified as having been acquired by Cline with the
property, or its proceeds, which he fraudulently acquired
from Farwell & Co.

In 2 Story, Equity Jurisprudence [13th ed.], 1259, it is
said: "The right [to follow the trust fund] ceases only
when means of ascertainment fail; which of course is the
case when the subject-matter is turned into money and
mixed and confounded in a general mass of property of
the same description." A great part of the argument of
counsel for Farwell & Co. here is devoted to a vehement
assault upon this rule. For our part we think the rule a
sound one. To overthrow it and adopt the contention con-
tended for by the learned counsel would lead to endless
litigation and confusion and work injury and injustice to
the innocent. But the rule assailed has received the sanc-
tion of this court. In *Wilson v. Coburn*, 35 Neb., 530,
Coburn was the assignee of the Bank of Omaha, which
had made an assignment, under the statute, for the benefit
of its creditors. Wilson filed a petition in the county
court, alleging that he had deposited with said bank a sum
of money prior to the bank's making an assignment; that
at the time he made such deposit the bank was insolvent
to the knowledge of its officers, and that such deposit was
received with the intention of cheating and defrauding
him. He prayed for a judgment declaring him a preferred
creditor, and for the payment of his claim in full out of
the assets of the insolvent bank. POST, J., speaking for
the court, said: "Under the allegations of the petition, is
the claimant entitled to preference over other creditors of
the insolvent bank, or, in other words, does the petition
state a cause of action? We think not. * * * The
fact that a bank is insolvent within the knowledge of its
officers, and receives the money of a depositor under cir-
cumstances which amount to a fraud upon him, is not of
itself sufficient to entitle the latter to preference from

32

the funds of the bank in the hands of an assignee. He may follow his money while he can trace and distinguish it, or the proceeds thereof, but not after it has passed into the hands of the assignee, mingled with the other funds of the bank." This case was decided upon the correct principle that the relation of creditor and debtor, or banker and depositor, existed between Wilson and the bank at the time the former parted with his money, and that as the money he had deposited had become mixed and mingled with the other funds of the bank, the money and its proceeds were incapable of specific identification, and could not therefore be recovered in specie; nor would a court of equity decree that the assignee of the insolvent bank held its entire estate in trust for the security and payment of the creditor so defrauded. The rule laid down in this case controls the case at bar. The judgment of the district court was right, and is accordingly

AFFIRMED.

HARRISON, J., not sitting.