F. L. JEWELL, ADMINISTRATOR, v. H. H. CLAY, ASSIGNEE, *et al.*, Appellants.

**Trust Funds:** GENERAL ASSIGNMENT. A husband transacted his wife's business from their marriage, in 1858, and in 1891 procured her indorsement to a certificate of deposit belonging to her and, procuring the money, loaned it, taking a note to himself. His wife indorsed the certificate when mentally incompetent, of which the borrower had no knowledge, though he knew the certificate belonged to the wife. The transaction on his part was *bona fide;* the husband representing that his wife had indorsed the certificate and had authorized him to make the loan. Thereafter the borrower made a general assignment for creditors, and the husband filed a claim, verified by him, for the amount due on the note. *Held,* that the assignee was not bound to account for the loan as a trust fund belonging to the wife in the hands of his assignor.

*Appeal from Blackhawk District Court.*—HON. A. S. BLAIR, Judge.

SATURDAY, DECEMBER 17, 1898.

ACTION in equity to have established and enforced a trust. There was a hearing on the merits, and a decree from which the defendants, H. H. Clay, assignee, and A. G. Chapman separately appeal.—*Reversed.*

*Boies & Boies* for appellant Clay, assignee.

*Courtright & Arbuckle* for appellant Chapman.

*Alfred Grundy* for appellee.

ROBINSON, J.—On the second day of June, 1891, five thousand six hundred and four dollars and seventy-four cents in money, which belonged to Mrs. Mary I. Chapman, was deposited to her credit in the First National Bank of Cedar Falls, Iowa, and a certificate of deposit was issued in her name. On the first day of the next month the certificate was returned to the bank and canceled, and in payment thereof the promissory note of the firm of W. M. Fields & Bro. for five thousand five hundred dollars, payable to A. G. Chapman three years after its date, with interest at six per cent. per annum, payable semi-annually, was given to Chapman, and he was given a credit on the books of the bank for one hundred and four dollars and seventy-four cents. Credit for the money represented by the certificate was given to Fields & Bro. by the bank, and it was used by the firm in prosecuting its business. Interest on the note to January 1, 1893, was subsequently paid by the maker. On the sixteenth day of May, 1893, the firm made to the defendant H. H. Clay a general assignment for the benefit of its creditors. The liabilities of the assignor, including contingent liabilities by reason of capital stock and indorsements of paper to the amount of one hundred and forty-one thousand eight hundred and sixty-six dollars

and forty-four cents, aggregate three hundred and twenty-one thousand two hundred and seventy-seven dollars and twenty-five cents, while the assets consist only of horses and cattle of the value of twenty-five thousand dollars, and real estate of the value of ten thousand dollars. Mrs. Chapman died intestate in December, 1895, and the plaintiff is the administrator of her estate. He claims that when the certificate of deposit was surrendered, and the loan to Fields & Bro., was made, the decedent was of unsound mind, and wholly incompetent to manage or control her property; that Fields & Bro. knew that fact; that the disposition made of the certificate and the loan to Chapman were a fraud upon the decedent; and that the money obtained from Chapman was wrongfully mingled with the money of the firm. The plaintiff asks that a trust for the sum thus obtained, with interest thereon, be decreed, and that the assignee be required to pay the amount thereof from the assets of the firm in his hands. The assignee denies liability, and asks, in case the claim of the plaintiff is sustained, that he be denied recovery from the assignee for one-third of the claim, for the reason that, if the loan was unauthorized, it was made through the wrongful acts of A. G. Chapman, who was the husband of the decedent, and entitled to one-third of her estate. Chapman was brought into the case as a defendant, and filed an answer to the cross petition of the assignee, in which he resisted his claim, and virtually joined the plaintiff in his demands. The district court established a trust for two-thirds of the amount in controversy, with interest, as against the assets in the hands of the assignee and the general creditors, and adjudged the interest of Chapman as the husband of the decedent in the claim of the plaintiff to be subject, in the hands of the assignee, to the claims of the general creditors.

I. The evidence establishes the following facts: The decedent married the defendant Chapman about the year 1858. He habitually transacted her business, and she never objected to his doing so. When the loan in question was

made, her mind was so far affected that she was not competent to transact business. He held the certificate of deposit in question, and negotiated the loan to Fields & Bro. To accomplish the transfer of the money, he wrote on the certificate the indorsement, "Pay to the order of A. G. Chapman," and caused his wife to sign it, and then placed his own signature below that of his wife. When that had been done the certificate was surrendered to the bank, and the loan and transfer of account were made as stated. Chapman represented to W. M. Fields, the senior member of the firm, and the one who conducted the negotiations for it, at the time the loan was made, that he had authority to make it, and that his wife had indorsed the certificate. Fields did not know the mental condition of the wife, and the transaction on his part was in the utmost good faith. After Fields & Bro. made its assignment, Chapman filed with the assignee a claim for the amount due on the note, verified by himself, in which he claimed to be the owner of the note. In view of these facts, it cannot be claimed that there are any equities in favor of Chapman. W. M. Fields was not only a member of the firm, but he was also president of the First National Bank at Cedar Falls, and must be held to have known whatever the books of the bank and the certificate of deposit disclosed respecting the ownership of the money in question; but the evidence fails to show that he or the bank or his firm knew of, or were chargeable with knowing, the mental condition of Mrs. Chapman. The indorsement was signed by her, and appeared to be in the usual course of business, and there was nothing in the transaction within the knowledge of Field & Bro. to challenge investigation. Although it is the rule that insane persons are not capable of contracting, an exception to that rule exists where the contract was "made in the ordinary course of business, is fair and reasonable, and the mental condition was not known to the other party, and the parties cannot be put in *statu quo*." *Alexander v. Haskins*, 68 Iowa, 73, and cases therein cited. See, also, Mechem Agency, section 48. We call attention to

this rule, not because we base our conclusion upon it, but as helping to illustrate the equities of this case.     The plaintiff relies upon the cases of *Independent Dist. v. King,* 80 Iowa, 497 ; *Plow Co. v. Lamp,* 80 Iowa, 722, and similar authorities, in support of his claim that a trust should be established.     In the case first cited a school treasurer deposited money, which he had received by virtue of his office, in a bank, which received the money with knowledge of its trust character.     The treasurer was not authorized to deposit school money, and, as the bank knew that the money belonged to the school district, the deposit did not create the relation of debtor and creditor, and the money was necessarily received by the bank as a trust fund ; and, although it was mingled with the funds of the bank, and its identity was lost, we held that it was not essential to the enforcing of a trust that the money be traced into some specific property ; that, as the bank knew the trust character of the deposit, it would be presumed, in the absence of a showing to the contrary, that it was preserved by the bank in some form, and that it passed into the hands of its assignee ; and that the burden was on the assignee, against whom it was sought to establish a trust, to show that the trust fund contributed nothing to the estate which he acquired by virtue of the assignment.     The rule of the case is not in conflict with what was decided in *Plow Co. v. Lamp,* and was approved in the recent case of *Jones v. Chesebrough,* 105 Iowa, 303, where we held, in effect, that it was not sufficient, in order that a trust be established, to trace trusts funds into the estate of an insolvent trustee ; that it must further appear, by presumption of law or otherwise, that the fund has been preserved to the trustee, as by an increase of assets in his hands, from which it may be taken without impairing the rights of general creditors.     It appears in this case that Fields & Bro. did not know that Chapman was not authorized to receive the money on the certificate of deposit, and loan it, as he did.     Therefore the firm did not know that the money it received was a trust fund, and there

can be no presumption that the fund was for that reason pre-
served in the estate of the firm.   The evidence shows that
when the loan was made the firm was solvent, although its
actual liabilities were about one hundred and thirty thousand
or one hundred and forty thousand dollars, and its contin-
gent liablities were from fifty thousand to seventy thousand
dollars.  The firm imported from forty to one hundred horses
each year, and the horses were worth from one thousand to two
thousand dollars apiece,—some selling for three thousand five
hundred dollars.   The money borrowed from Chapman went
into the general funds of the firm, and was used in carrying
on its business, as were from forty thousand to fifty thousand
dollars of other money afterwards borrowed.   In the year
1893 there was a financial crisis.   Demand for the horses in
which the firm was dealing ceased, and the value of its prop-
erty depreciated from one hundred per cent. to twelve per cent.
In view of this evidence it cannot be presumed that the prop-
erty in which the loan obtained of Chapman was invested was
and continued to be of the full value of the loan, that it passed
to the hands of the assignee and that the depreciation and loss
were wholly in other property.   The facts of this case bring
it within the rule of *Jones v. Chesebrough,* and it follows that
the district court erred in decreeing a trust as against the
property in the hands of the assignee.

II.   The conclusion reached in regard to the trust which
the plaintiff seeks to have established makes it unnecessary to
consider at length the questions involved in the appeal of
Chapman.   The decree, so far as it was adverse to him, was
correct, although it was the result of erroneous reasoning.   It
follows from what we have said that so much of the decree of
the district court as is involved in the appeal of the assignee,
Clay, is REVERSED, and so much as is involved in the appeal of
Chapman is AFFIRMED.