In the Matter of the Receivership of the First State Bank of Corwith, Iowa, E. L. STILSON, ET AL.

FIRST STATE BANK OF CORWITH, PEOPLE'S SAVINGS BANK OF ST. BENEDICT, Claimant; S. R. RAYMOND, Claimant; GRUNDY COUNTY NATIONAL BANK, Claimant, and THE GARNAVILLO SAVINGS BANK, Claimant, Appellees, v. W. C. OELKE, Receiver of First State Bank of Corwith, and Others, Appellants.

**Insolvency:** RECEIVERSHIP: APPEAL BY RECEIVER. Although a receiver may have no personal interest in a contest between creditors, still where the court authorizes the receiver to join with the general creditors in an appeal from a judgment allowing certain prefer-

ences no prejudice can arise to the preferred creditors, and the appeal will not be dismissed on that account.

**Same:** APPEAL: PARTIES: COMMON OR GENERAL INTEREST. Where, as in this case, it was clearly shown that the assets of the insolvent bank were insufficient to meet the claims of creditors, even though no preference should be allowed, and there were a large number of depositors and general creditors having a common interest and affected by the allowance of preferences, a portion of such creditors may, on behalf of the whole number, appeal from a judgment allowing preferences, under the provisions of Code, section 3464; especially where such creditors appeared by counsel and resisted the allowance of the preferred claims without any question as to their right to do so.

**Same:** PREFERRED CLAIMS: BURDEN OF PROOF. A creditor asking that his claim against an insolvent estate be given preference has the burden of showing, either by legal presumption or other evidence, that his money went into and increased the assets of the estate, and can be taken therefrom without impairing the rights of general creditors.

**Same.** The general rule is that one induced by fraud to part with his money or property can recover the same or the proceeds thereof, on the theory that he has a preferred right, only where he can trace or identify it independently of any legal presumption; as fraud alone does not create an equity in his favor superior to the rights of general creditors of an insolvent estate.

In this action the cashier, having full charge of the insolvent bank, forged notes payable to the bank, sold them to another bank and stole the proceeds, no other officers having any knowledge of the transaction. *Held,* that the discounting bank was not entitled to have its claim established as a preference against the assets of the insolvent estate.

Weaver, J., dissenting.

*Appeal from Hancock District Court.*—Hon. J. J. Clark, Judge.

SATURDAY, DECEMBER 17, 1910.

THE opinion states the case.—*Reversed.*

*John E. Wichman, C. R. Wood* and *Senneff & Bliss,* for appellants.

*Sullivan & McMahon* and *E. A. Morling,* for appellees People's Savings Bank of St. Benedict and G. W. Mason & Co.

*H. B. Boies* and *Williamson & Willoughby,* for appellees Raymond and Grundy County Nat. Bank.

*J. E. Corlett* and *R. E. & V. T. Price,* for appellee Garnavillo Savings Bank.

SHERWIN, J.—This action was originally brought by the plaintiff Stilson to place the First State Bank of Corwith in the hands of a receiver, and W. C. Oelke was later appointed receiver of said bank and duly qualified. The People's Savings Bank of St. Benedict, G. W. Mason & Co., S. R. Raymond, Grundy County National Bank, and the Garnavillo Savings Bank filed claims against the First State Bank of Corwith, and subsequently asked that such claims be given preference over the claims of the general creditors of the bank and preference over the claims of depositors in said bank. W. C. Oelke, as receiver of the Bank of Corwith, filed objections to the claims above referred to and denied the right of claimants to preference. There were a great many depositors. Walter Wildman and A. J. Doidge were depositors of their own funds, as we understand the record, and F. A. Beers was the clerk of Major township, which was a depositor. The persons named joined in objections to the claims on their own account and as a committee representing a large number of depositors. Each of these claims was tried separately in the district court, and preference was allowed as .to the whole or a part of each. The receiver and the depositors appearing and represented appeal. The cases have been consolidated for presentation to this court.

I. After the appellees had filed their opening argument, they filed a motion to dismiss the appeal of Oelke,

receiver, on the ground that he was an officer of the court and was bound to accept its decision; that he was not a party to the controversy between creditors, and was not personally interested in the decision; and that he is not permitted to use trust funds for conducting litigation in behalf of one set of creditors as against another set of creditors. It may be true that the receiver has no personal interest in this contest between the creditors of the bank, and that, under such circumstances, an appeal by him would not ordinarily be entertained. But in this case the district court expressly authorized an appeal by the receiver, and we can not now see that it will work any prejudice to the appellees or make any difference with the final disposition of the case.

*1. INSOLVENCY: receivership: appeal by receiver.*

The appellees also moved to dismiss the appeal of the First National Bank of Garner and of the other objectors because they are not parties to the controversy and are not prejudiced by the judgment. The motion to dismiss must be overruled. It is clearly shown that the assets of the defunct bank are wholly insufficient to meet the claims of creditors, even though no preference be allowed. The allowance of preferences will, therefore prejudice the rights of the other creditors, and such creditors have a common interest in defeating the preferences which have been allowed. Section 3464 of the Code provides as follows: "When the question is one of common or general interest to many persons, or when the parties are very numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole." This statute was considered in *Fleming v. Mershon,* 36 Iowa, 413, and the holding was in accord with the appellees' contention herein; but that case was overruled in *Brandirff v. Harrison County,* 50 Iowa, 164, and the overruling opinion has since been followed. *Palo Alto Banking Co.*

*2. SAME: appeal: parties: common or general interest.*

*v. Mahar,* 65 Iowa, 74; *Gorrell v. Gates,* 79 Iowa, 632; *Corey v. Sherman,* 96 Iowa, 114. There are a large number of depositors and general creditors with common interests. It would be impracticable to bring them all before the court, or to permit them to file separate contests, and we think this a case clearly within the letter and spirit of the statute. Moreover, the appealing depositors were represented by attorneys in the district court. At all stages of the proceedings they resisted the appellees' claims, without any question being made as to their right to do so. The case was tried on the theory that the depositors were resisting the claims, and the appellees can not now have them dismissed from this court on the ground that they were not parties to the record. *Savings Bank v. Kent,* 135 Iowa, 386, and cases cited therein. This rule applies with particular force to Beers, who was a member of the depositor's committee, but individually represented the township of which he was the clerk, instead of his personal interest.

II. The First State Bank of Corwith began business in 1895, and closed its doors on the 20th of November, 1907. The receiver was appointed on the 27th of November, 1907, and took possession of the assets of the bank within a few days thereafter. J. H. Standring was the bank's cashier from the time it was opened for business until a few days before its close, when he absconded. At various times between the middle of June, 1906, and September 1, 1907, Standring as cashier of the Corwith Bank delivered to the People's Savings Bank of St. Benedict for rediscount promissory notes which appeared to have been properly executed and delivered to the Corwith Bank. These notes were taken by the St. Benedict Bank and the amount paid therefor was sent to the Corwith Bank in exchange. Between June, 1903, and October 15, 1907, Standring as cashier had similar transactions with the other appellees.

3. SAME: preferred claims: burden of proof.

When the Corwith Bank was closed, all of the appellees held paper which had thus been received from it, and, for the purposes of this case, it must be conceded that all of this paper was forged and that Standring had forged it. The record shows that he had practically the exclusive charge and control of the bank's business; that the paper in question was made payable to the Bank of Corwith; and that none of its other officers or directors had any knowledge of its falsity.   The appellees base their claims for preference on the grounds that their money was obtained by fraud, false representations and forgery, and because thereof the bank became a trustee of said money *ex maleficio*, and they say that their money having been traced into the funds of the bank, the assets of said bank in the hands of the receiver were necessarily increased thereby.   It is the settled rule of our cases that a preference will not be allowed unless it be found that the fund has increased the present assets of the bank, and that it may be taken therefrom without impairment of the rights of creditors.   *Jones v. Chesebrough,* 105 Iowa, 303; *Bradley v. Chesebrough,* 111 Iowa, 126.   In the latter case it is said:   "That plaintiff was a trust creditor does not of itself, entitle him to preference over general creditors.   To obtain that right he must show, by presumption of law, or otherwise, that his fund has been preserved in the hands of the assignee, as an increase of the assets of the estate from which it may be taken without impairment of the rights of general creditors."

Under these authorities and many more that might be cited, the creditor who asks that his claim be given preference has the burden of showing that his money has come into the hands of the assignee as an increase of the assets of the estate, and that it may be taken therefrom without impairing the rights of general creditors.   It is true that in certain cases a presumption arises in favor of the preference claimed, but such presumption does not relieve the

plaintiff from the duty of showing "by presumption or by positive proof" that he is entitled to the preference claimed. It would be the rankest fiction in this case to say that the appellees have proven by any evidence that their money ever reached the hands of the receiver as an increase of the assets of the Corwith Bank. No one can read the record without becoming thoroughly satisfied that every dollar of such money was stolen from the bank by Standring, and that it was so stolen as soon as it could be done without too great danger of disclosure. Therefore, to sustain the preferences allowed by the district court it must be held that a presumption of law obtains that the appellees' money is preserved in the hands of the receiver as an increase of the assets of the bank, and that the appellants have failed to meet such presumption. In considering the question of presumption, it must be borne in mind that no fiduciary relation is involved; that the appellees parted with their money in exchange for forged paper in the usual course of business, and that the only trust involved is one created by the fraudulent acts of Standring acting as the cashier of the bank.

The general rule, where a person has been induced to part with his money or other property through fraud, is that the defrauded party may recover his property or the proceeds thereof if he can trace and identify it, but the identification must be made 4. Same. without the aid of a legal presumption. *Cadwell v. King,* 84 Iowa, 229; *Seeley v. Seeley-Howe-Le Van Co.,* 128 Iowa, 294; *Bruner v. First Nat. Bank,* 97 Tenn. 540 (37 S. W. 286, 34 L. R. A. 532), and see note in connection therewith; *Atkinson v. Rochester Printing Co.,* 114 N. Y. 168 (21 N. E. 178); *Farwell v. Kloman,* 45 Neb. 424 (63 N. W. 798). Fraud does not alone create equities superior to those of general creditors. Hence the fraudulent receipt of deposits in a bank, or the fraudulent acquirement of goods, does not give the depositor or the vendor

a lien upon the entire estate or entitle him to a preference. *Cadwell v. King, supra; McHenry v. King,* 85 Iowa, 717; *Seeley v. Seeley-Howe-Le Van Co., supra; Elwell v. Kimball & Champ,* 102 Iowa, 720. A preference can not be based on the "greater supposed sacredness of one debt," or on the fact "that it arose out of a violation of duty, or that its loss involves greater apparent hardship in one case than in another, unless it appears in addition that there is some specific recognized equity founded on some agreement, or the relation of the debt to the assigned property which entitles the claimant, according to equitable principles, to preferential payment." *Officer v. Officer,* 120 Iowa, 389; *Cavin v. Gleason,* 105 N. Y. 256 (11 N. E. 504). The right to a preference is based on a right in the particular property or fund, and the manner of acquiring such property or fund is not material, that being only an incident thereto. *Jones v. Chesebough, supra; Bradley v. Chesebrough, supra; Officer v. Officer, supra.* While we have held that where a bank receives money wrongfully, "a trust arises as between it and the true owner of the money," *Smith v. Bank,* 107 Iowa, 620, we have never held that the wrongful act of the bank will alone create a preference as against general creditors.

Are the appellees herein entitled to the aid of the legal presumption that their money reached the hands of the receiver in the form of increased assets of the bank, and that it may be taken therefrom without impairing the rights of the general creditors? We are of the opinion that an affirmative answer to the inquiry would require us to go a step farther than we have ever gone, and to establish a rule that would be unjust and inequitable. We have already gone to the extreme limit in giving claimant the benefit of the presumption referred to, and we are not disposed to extend the rule. In *Ind. Dist. of Boyer v. King,* 80 Iowa, 497, where the rule was first adopted and applied by this court, the fund deposited belonged

to the school district; it was a trust fund when deposited, and the bank knew its trust character. The opinion says: "As they received it knowing its trust character, it will be presumed, in the absence of a showing to the contrary, that it was preserved by them in some form, and that it passed into the hands of the assignee." In *Dist. Twp. of Eureka v. Bank,* 88 Iowa, 194, the fund was also a trust fund when deposited, which fact was also known to the bank. In *Re Assignment of Knapp & Co.,* 101 Iowa, 488, the money was deposited by a guardian and was a trust fund. In *Brooke v. King,* 104 Iowa, 713, the deposit was also a trust fund.

In all of our cases, except one which will be noticed later, where the presumption has been given force, the deposits were of trust funds, the character of such funds was known to the banks when the deposits were made, and the deposits involved no wrongful act on the part of the banks. The presumption was in every instance based on the theory that the bank, knowing the character of the fund and acting honestly would not use or dissipate it as long as it had funds of its own. See *Jewell v. Clay,* 107 Iowa, 52; *Smith v. Bank,* 107 Iowa, 620. The case which may be treated as the exception is *Whitcomb v. Carpenter,* 134 Iowa, 227, and it is the case upon which the appellees chiefly rely for an affirmance of the judgment. In that case the plaintiff paid the Bank of Olin for a draft drawn on a correspondent Chicago bank where the Bank of Olin then had no funds. The plaintiff also paid to the Bank of Olin money due on a note given to said bank, but which was held by a third party. The receipt of the money for application on the plaintiff's particular debt was not wrongful in itself, and a trust was created by its acceptance. We held, however, that the receipt of the money for the draft was wrongful and that a trust was thereby created. It was shown that at the time the Bank of Olin failed the liabilities of the bank greatly exceeded its assets, and

the appellees argued therefrom that it was affirmatively shown that the assets of the bank in the hands of the assignee were in no manner increased by the plaintiff's funds. In discussing this feature of the case it was said that the trustee is presumed to have withdrawn his own money. We think a distinction may fairly be made between that case and this. There, the bank undertook to return to Whitcomb his money, but at another place, and became thereby a trustee by contract, while here there was a sale, and the trust relation is created by law because of the fraudulent act of the bank. But in any event we do not think that it can be presumed that a bank will keep money that it has obtained by means of wilful and deliberate criminal acts. The ordinary thief disposes of stolen property as soon as possible, and it would be going a long way to say that a bank that has obtained money by means of its deliberate forgery will be presumed to have kept it on hand to be returned to the injured party intact. We are not willing to so hold, and without such presumption the appellees have made no showing that entitles them to preference. The judgment establishing preference in favor of the appellees herein is therefore reversed. The appellees' motion to dismiss was not filed until after they had filed their opening argument, and in response to said motion the appellants filed an amendment to their abstract. The appellees move to strike said amendment on the ground that it was not filed in time and for other reasons. We think the motion without merit, and it is overruled.—*Reversed*.

WEAVER, J., dissenting.