FIRST NATIONAL BANK OF MISSOURI VALLEY, Appellee, v. J. G. SARVEY et al., Appellants.

**BILLS AND NOTES:** Holdership in Due Course—Fraud—Hearsay.
1  Fraud in the inception of a note may not, of course, be established by hearsay testimony.

**CONTRACTS:** Execution—Mental Competency—Burden of Proof. In
2  order to invalidate, on the ground of mental incompetency, a fair and reasonable contract executed in the ordinary course of business, it must appear (1) that the party in question was so mentally deficient that he did not have intelligent appreciation of the effect of the contract; and (2) that the other party to the contract expressly or impliedly had notice of such fact; and (3) that the status quo has been restored.

**EVIDENCE:** Opinion Evidence—Conclusions and Matters of Compari-
3  son. Testimony constituting a conclusion and a matter of comparison by a witness is properly stricken.

*Appeal from Harrison District Court.*—O. D. WHEELER, Judge.

MAY 6, 1924.

REHEARING DENIED NOVEMBER 21, 1924.

ACTION at law, to recover upon two promissory notes signed by J. G. Sarvey. Upon the conclusion of the plaintiff's testimony, the court directed a verdict, on motion of the plaintiff. From the judgment entered, defendants appeal.—*Affirmed.*

*James S. Dewell* and *Robertson & Havens,* for appellants.

*C. W. Kellogg* and *Roadifer & Burbridge,* for appellee.

DE GRAFF, J.—Two promissory notes, executed by J. G. Sarvey as maker, and payable to the plaintiff bank, are involved in this controversy. Upon the maturity of these notes, they were not paid, and this action was instituted. The petition is in two counts. The note in Count 1, upon which a recovery is predicated in the sum of $3,125, with interest, is a renewal note, given to the plaintiff by J. G. Sarvey in lieu of two other notes indorsed by the Skinner Packing Company to plaintiff. The note in Count 2, upon which recovery is predicated in the sum of $3,300, with interest, was executed by Sarvey for moneys advanced by plaintiff bank, to pay upon maturity two notes held by the Logan Trust & Savings Bank, of Logan, Iowa.

1. BILLS AND NOTES: holdership in due course: fraud: hearsay.

Two defenses were pleaded to these notes, to wit: (1) fraud in their inception; (2) mental incapacity of the maker, Sarvey, at the time of their execution. There is no competent evidence whatsoever to establish the pleaded fraud. The only testimony tending to prove fraudulent representation must be classed as hearsay, as it consists of statements claimed to have been made by the maker, Sarvey, sometime subsequently to the execution of the notes, to one of his sons, who recited as a witness what was said to him by his father. The trial court undoubtedly admitted the statements as bearing upon the question of the mental condition of the father, and in the ruling on plaintiff's motion to direct, said:

"The question of fraud in the inception of these notes must necessarily fail. I do not understand that it is seriously urged. I do not think it is seriously contended that a case of

fraud is made out; at least I cannot conceive of it being so contended.''

This proposition was correctly ruled, and as to this defense the plaintiff bank is a holder in due course. It is shown without conflict that the note referred to in Count 2 of plaintiff's petition represented moneys actually loaned by the plaintiff bank to Sarvey, to pay the matured notes owing by him to the Logan bank. Value was paid for the note pleaded in Count 1, and the bank is deemed *prima facie* to be a holder in due course. Section 3060-a59, Supplement to the Code, 1913.

The second proposition argued by appellant offers more latitude for discussion on the fact side, but presents a limited field in the application of legal principle. Considerable evidence was introduced, bearing upon the mental condition of J. G. Sarvey prior and subsequent to the execution of these notes, and it is shown that a temporary guardian of his property was appointed July 6, 1920, which was made permanent September 30, 1920. The renewal note, given directly to the plaintiff bank, bears date April 14, 1920, and the second note represents the loan on April 15, 1920. One cannot read the record without being impressed that Sarvey was suffering from mental deterioration. His acts and conduct were not at all times those of a normal mind; but mere mental weakness will not invalidate a contract made in the ordinary course of business, unless such person was not capable of intelligent action,—that is, to such an extent that he did not have intellectual comprehension or appreciation of the effect of his contract. We are not dealing with executory contracts. They were executed, and it is shown that they were fair and reasonable, made in the usual course of business, and that the alleged mental condition of the contracting party was not known to the plaintiff; nor was the plaintiff put *in statu quo*. These are the essentials in proof. *Alexander v. Haskins,* 68 Iowa 73; *Jewell v. Clay,* 107 Iowa 52; *Nutter v. Des Moines Life Ins. Co.,* 156 Iowa 539; *Burch v. Nicholson,* 157 Iowa 502.

2. CONTRACTS: execution: mental competency: burden of proof.

The burden was upon the defendant, not only to prove insanity or incapacity to understand the nature of his obligations at the time in question, but that the plaintiff knew it. In a case

of this character, the opinion of the trial court is entitled to weight. He saw and heard the witnesses, and was in a position to study the facts in a different way than we are, with the printed record before us. For this reason we quote from the ruling entered on the motion to direct:

"There is nothing in the evidence with relation to notice or knowledge of the bank, unless it be from Mr. Sarvey's appearance * * * He has been confined in an institution for a year and a half or more, after having been released for a few months, subsequent to his original confinement; and it goes without saying that his appearance cannot be the same now as it was at that time, when he had just come in from the farm, where he had been living for several years * *. *. The evidence of the experts shows that he is suffering with senile dementia, and that this is a disease which is permanent and progressive. How far it had progressed, they do not state, nor do they profess to know. One of them saw him within a month or two of the time the notes were executed; the other saw him but recently. They base their judgment upon his appearance at that time, and say that in their judgment he was incapable of executing a contract in April, 1920. The only other evidence is as to various transactions which it is claimed Mr. Sarvey was engaged in, both prior to the execution of these notes and after the execution of these notes. No one has testified as to his mental condition or his appearance upon the day these notes were executed. He had been conducting his business as he had been conducting it for years. He was living upon the farm where he had lived for years. It is true there were some peculiar manifestations,— he did some strange things; but there is no evidence of any fixed or permanent condition of insanity at any time prior to the execution of these notes. When a fixed or permanent condition of insanity is once shown, then that condition is presumed to exist until the contrary is shown. He was transacting business as occasion demanded; concluded a deal whereby he took title to a large tract of land very near this time; made a large mortgage upon property at that time; bought and sold stock; made some trades, of course, that were perhaps improvident; negotiated for an automobile which he did not take,—but perhaps

that demonstrated his wisdom, rather than lack of wisdom. There is no evidence of anybody who, prior to the execution of these notes, ever suspected that he was insane. No one thought of such a thing until after the execution of the notes. So far as this record goes, while there is testimony of witnesses that they thought his actions strange, nobody ever thought that he was incapable of transacting his own business. * * * He was transacting his business, and business of importance, all the time, and no one thought to question it."

The conclusion announced by the trial court under the record is unescapable.

Appellant challenges numerous rulings of the court on the admission of evidence bearing on the question of the sanity of Mr. Sarvey. We discover no prejudice in these rulings, and in most instances the matter elicited finds lodgment in the record. Many of the questions were clearly immaterial to any issue, and no purpose would be served in passing on the rulings singly.

3. EVIDENCE: opinion evidence: conclusions and matters of comparison.

A few will be noted as typical. One witness was asked to state what he "observed in him or noticed that was unusual." Objection to this question was sustained. The answer might well have been permitted; but no prejudice resulted, as the so-called "unusual" acts went to the jury. On motion, the following was stricken: "Everything that we done out there, it seemed like it was wrong,"—referring to the attitude of Mr. Sarvey to work on the farm. Again: "He [Sarvey] didn't seem to know what he was going to do, or what he wanted to do," and "he wanted to get away from them" (meaning visitors). This question was not permitted to be answered: "You may tell the jury, describe to the jury, whether he got worse or not in 1919." "Did you [guardian] investigate the value of a certificate of stock in the Basket Company?"

We do not think it necessary to quote further the questions to which legal objections were sustained, or the testimony that was stricken on motion. The evidence involved mere conclusions, or matters of comparison, and not statements of fact material to the case.

Complaint is also made that the trial court, on objection

of plaintiff, erroneously refused to permit certain nonexpert witnesses to express their opinion as to the sanity of the defendant Sarvey. In view of the character of the facts and circumstances recited by these witnesses, we cannot hold that the rulings constituted reversible error, even though it is conceded that this line of inquiry was too strictly limited. The inclusion of the opinion of these witnesses would not cause a different ruling on the motion to direct. There was opinion evidence, both expert and nonexpert, bearing on the insanity of Sarvey, and more opinion of this nature would not justify the court in submitting the case to a jury, or sustaining its verdict for defendants, had one been returned, under the record facts and the legal principles controlling. Conceding, for the purposes of this case, that the defendant Sarvey was mentally unsound in some degree when he signed the notes, it conclusively appears that the notes were executed in the ordinary course of business, and that the transaction giving rise to them was fair and reasonable. The record is silent that the plaintiff had any knowledge of the mental incapacity of Sarvey, or was acquainted with any facts that would put plaintiff on inquiry. With the record in this state, the trial court was under no legal duty to submit the issues to the jury. Defendants did not meet the burden of proof which the law casts upon them. The verdict was properly directed. Wherefore, the judgment entered is—*Affirmed*.

ARTHUR, C. J., and STEVENS and VERMILION, JJ., concur.