CITY OF ST. PAUL v. FRANK A. SEYMOUR and Another.[1]

January 24, 1898.

Nos. 10,873—(249).

**Trust Funds—Appropriation by Trustee to Pay His Own Debts— Insolvency of Trustee—Right of Beneficiary to Lien on Assets.**
Trust funds, without being mingled with the assets or funds of the trustee, were paid out by him in satisfaction of his own indebtedness. *Held*, the cestui que trust is not entitled to have a lien or trust declared in his favor on the funds or assets in the hands of the receiver in insolvency of the trustee, subsequently appointed, and is not a preferred creditor.

In the matter of the receivership of the Bank of Minnesota the city of St. Paul filed a petition in the district court for Ramsey county, asking that Frank A. Seymour and William H. Lightner, as receivers of said bank, be required to pay to the petitioner out of the general funds in their hands a balance of $22,480.81 due the petitioner from the insolvent bank upon trust account. From an order of O. B. Lewis, J., dismissing its petition on the motion of the receivers, the petitioner appealed. Affirmed.

*James E. Markham* and *Carl Taylor*, for appellant.

The balance which remained in the bank to the credit of the "coupon account" was a trust fund, and, by the application of equitable rules, such trust fund can be traced into the cash funds coming into the hands of the receivers. It is not the identity of the form, but the substantial identity of the fund itself, which is the important thing. City v. Johnson, 5 Dill. 241; First v. Armstrong, 36 Fed. 59; Massey v. Fisher, 62 Fed. 958; Cleveland v. Hawkins, 79 Fed. 29; Montagu v. Pacific, 81 Fed. 602; Third v. Stillwater, 36 Minn. 75. When the bank receiving a check or draft "for collection only" receives payment in the form of a credit to itself at the clearing house, it is as actual a payment of the check as if the bank had received the cash money over the counter. Howard v. Walker, 92

[1] Reported in 74 N. W. 136.

Tenn. 452; 3 Randolph, Com. Paper, 1395; Charlotte v. American, 34 Hun, 26; Indig v. National, 80 N. Y. 100.

If the trust funds deposited by the city went into the bank and were represented by an indistinguishable portion of its general funds, and if an equal amount remained in the bank continuously from that time until the receivers took possession, it is well settled that the funds may be recovered from the receivers. Knatchbull v. Hallett, L. R. 13 Ch. Div. 696; Cavin v. Gleason, 105 N. Y. 256; Nonotuck v. Flanders, 87 Wis. 237; Continental v. Weems, 69 Tex. 489; National v. Insurance, 104 U. S. 54; Frelinghuysen v. Nugent, 36 Fed. 229.

Even if such trust funds cannot be traced into the hands of the receivers, yet as they were wrongfully commingled by the bank with, and went to augment, its general assets, the receivers representing the creditors stand in the shoes of the bank, and must refund from the general assets the amount of such trust fund. Peak v. Ellicott, 30 Kan. 156; Ryan v. Phillips, 3 Kan. App. 704; Myers v. Board, 51 Kan. 87, 98; Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 514; First v. Sanford, 62 Mo. App. 394; Wisconsin v. Manistee, 77 Mich. 76; In re Johnson, 103 Mich. 109; Wallace v. Stone, 107 Mich. 190; Davenport v. Lamp, 80 Iowa, 722; Independent v. King, 80 Iowa, 497; Henderson v. O'Conor, 106 Cal. 385; Anderson v. Pacific, 112 Cal. 598; First v. Hummel, 14 Col. 259, 273; German v. Kimble, 66 Mo. App. 370; Windstanley v. Second, 13 Ind. App. 544; Smith v. Combs, 49 N. J. Eq. 420; People v. City, 96 N. Y. 32; Capital v. Coldwater, 49 Neb. 786; San Diego v. California, 52 Fed. 59; Montagu v. Pacific, supra; Massey v. Fisher, supra.

*Young & Lightner,* for respondents.

Assuming that the fund in question is a trust fund, yet no part of it went to augment the estate of the receivers, or even came into their hands. There is a clear distinction between adding to an insolvent estate by mingling with it trust property, and using the trust property to pay the insolvent's debts. In the one case the assets are increased with an equal increase of indebtedness; in the other case when the insolvent uses trust funds to pay debts, he

does not increase, even for an instant, his assets, although he reduces his existing debts, creating a new liability to the same amount for converting the trust property. In re Seven Corners Bank, 58 Minn. 5; Bishop v. Mahoney, 70 Minn. 238.

The great weight of authority is against the proposition that if the trust fund goes to augment the estate of the trustee (and not to pay his other debts), the cestui que trust has a lien on the general assets of that estate. The earlier cases in New York and Wisconsin have been overruled. National v. Insurance, 104 U. S. 54; Litchfield v. Ballou, 114 U. S. 190; Peters v. Bain, 133 U. S. 670; Metropolitan v. Campbell, 77 Fed. 705; Spokane v. First, 68 Fed. 979; Boone v. Latimer, 67 Fed. 27; Spokane v. Clark, 61 Fed. 538; Multnomah v. Oregon, 61 Fed. 912; Commercial v. Armstrong, 39 Fed. 684; Philadelphia v. Dowd, 38 Fed. 172; Wasson v. Hawkins, 59 Fed. 233; Illinois v. First, 15 Fed. 858; Cecil v. Thurber, 8 C. C. A. 365; Cragie v. Hadley, 99 N. Y. 131; Cavin v. Gleason, 105 N. Y. 256; Atkinson v. Rochester, 114 N. Y. 168; Little v. Chadwick, 151 Mass. 109; Appeal of Hopkins (Pa.) 9 Atl. 867; Englar v. Offutt, 70 Md. 78; Slater v. Oriental, 18 R. I. 352; In re Lebanon Bank, 166 Pa. St. 622; Freiberg v. Stoddart, 161 Pa. St. 259; Commercial v. Davis, 115 N. C. 226; St. Louis v. Austin, 100 Ala. 313; Northern v. Clark, 3 N. D. 26; Muhlenberg v. Northwestern, 26 Ore. 132; Union v. Goetz, 138 Ill. 127; Mutual v. Jacobs, 141 Ill. 261; Shields v. Thomas, 71 Miss. 260; Burnham v. Barth, 89 Wis. 362; Nonotuck v. Flanders, 87 Wis. 237; In re Plankington, 87 Wis. 378; Henika v. Heinemann, 90 Wis. 478; Portland v. Locke, 73 Me. 370; Goodell v. Buck, 67 Me. 514.

CANTY, J. [2]

The city of St. Paul kept in the Bank of Minnesota two accounts. One was a general account, on the funds in which the city treasurer drew checks for the various bills and items of expense which the city owed, except interest on its bonds; the other, a special account, the funds in which were kept solely for the purpose of being forwarded to the Chase National Bank of New York for the payment of interest on the bonded indebtedness of the city. These

[2] BUCK, J., absent, took no part.

71 M.—20

accounts were so kept for about five years prior to December 22, 1896, on which day the Bank of Minnesota, being insolvent, was taken possession of by the state bank examiner, and receivers were appointed by the court to take charge of its assets, and administer them for the benefit of its creditors.   On October 19, 1896, the city deposited in this special account $56,865, and on November 20, 1896, the further sum of $16,820.   All of this, except a balance of $22,-480.81, had been forwarded by the Bank of Minnesota to the Chase National Bank, and paid out on bond coupons, before the failure of the Bank of Minnesota on December 22d.

The city filed its petition in the proceeding in which the receivers were appointed, and asked that this balance be declared a trust on the funds in the hands of the receivers, and that they be ordered to pay the same over to the city.   The application of the city came on for hearing before the court, and thereupon, for the purpose of a motion of the receivers to dismiss the petition, the city and the receivers entered into a stipulation which was to be considered with and as a part of the petition.   On such motion, the court dismissed the petition, and from the order dismissing the same the city appeals.

Besides the foregoing facts, it is alleged in the petition

"That it was understood and agreed between the said city of St. Paul and the said Bank of Minnesota, at the time said account was opened, that the funds so deposited should be held by said bank as agent and trustee for said city, and not otherwise; that the account so opened with said bank should be known as the 'City of St. Paul Coupon Account,' and the funds deposited in said account by said city of St. Paul should be kept separate and apart from the general funds of said bank;   *   *   *   that the said bank kept the amount so deposited to the credit of said coupon account mixed with its general cash funds in its vaults, but that at all times since the opening of said coupon account said Bank of Minnesota has kept on hand in its vaults a sufficient amount of cash to pay the amount credited to said City of St. Paul Coupon Account."

It is further alleged that, when funds were deposited in the bank in this account, the amount of the same was entered on a pass book; that the bank would then forward the funds to the Chase National Bank, and, after the coupons were paid by the latter bank, it would cancel and return them to the Bank of Minnesota; and the

latter bank would deliver them to the city comptroller, who would then direct the city treasurer to give the latter bank a check drawn on this account for the amount of the coupons, and, on the delivery of this check, the amount of the same would be charged to the city by the bank in this account. It was stipulated, as aforesaid,

"That the deposits made by the city to the credit of said special coupon account were made by checks drawn by the treasurer of the city of St. Paul upon various banks in the city other than the Bank of Minnesota, in which banks the city had a general deposit account; and that, upon receiving said checks, the Bank of Minnesota in each instance, after crediting the said special coupon account with the amount thereof, mingled said checks with other similar items in the form of checks on other banks in the city received in the usual course of business from its general depositors, and that these checks, including those received from the city to the credit of said special coupon account, were thereupon, in the usual course, sent by the Bank of Minnesota to the Clearing House of St. Paul, and there used and applied in the usual course in the payment and settlement of checks held by other banks of the city upon the Bank of Minnesota, the Bank of Minnesota paying into the clearing house a sufficient amount in currency or checks to pay the balance remaining due the clearing house in case the balance was against it; and that, in the cases of the deposits described in the petition, the balance was in each case against said Bank of Minnesota, and the Bank of Minnesota received nothing from the proceeds of said deposits, excepting the use of the same, as aforesaid, in payment of its obligations at said clearing house.

"But that the said city of St. Paul, or any of its officers, never had any notice or knowledge, until after the commencement of these proceedings, of the manner in which said Bank of Minnesota used or applied the said checks as aforesaid, or that the same were used and applied in the payment or settlement of checks held by other banks in the city of St. Paul upon the Bank of Minnesota, or in settlement or payment of any of the obligations of said bank at said clearing house, or that, in the cases of the deposits described in the petition, the balance was in each case against the Bank of Minnesota or that the said Bank of Minnesota received nothing from the proceeds of said deposits, except in the manner above stated."

We will assume for the purposes of this case that a fiduciary relation existed between the city and the Bank of Minnesota as to the funds in question. In the case of Bishop v. Mahoney, 70 Minn. 238, 73 N. W. 6, we stated that there were four principal lines of decisions on the question how far and under what circumstances trust

funds in the hands of the trustee may be traced and followed, but we did not determine which of the four propositions there laid down states the utmost limit to which such funds can be traced and followed. Neither is it necessary to decide that question in the present case, which might come within the fourth proposition were it not for the fact that the trust fund here in question never went directly to augment the assets of the insolvent trustee at all, but went directly in payment of its other debts. For the reason that the funds were so applied in payment of the other debts of the insolvent bank, the case is completely disposed of by the case of In re Seven Corners Bank, 58 Minn. 5, 59 N. W. 633; and the city is not entitled to have the amount due it declared a lien or trust on other assets or funds in the hands of the receivers, with which the funds of the city were never commingled, and into which they never entered.

Order affirmed.