ROBERT L. LEACH, State Superintendent of Banking, Appellee, v. STATE SAVINGS BANK OF LOGAN et al., Appellees; CHARLES E. KENNEDY et al., Appellants.

**TRUSTS:   Constructive Trusts—Receipt by Agent for Special Purpose.**
1  A bank which, as agent either of the lender or the borrower, receives the proceeds of a loan for the specific purpose of discharging certain incumbrances on property, holds said proceeds in a trust capacity.

**BANKS AND BANKING:   Insolvency—Impressing Trust on Funds.   A**
2  trust may not be impressed upon funds in the hands of the receiver of an insolvent unless it is established (1) that the insolvent received in a trust capacity the particular funds in question, and (2) that the receiver also received said particular funds either in specie or by way of augmentation of the assets which did come into his hands.   Evidence held insufficient to establish the latter fact.

**BANKS AND BANKING:   Deposits—Depositor Defined.**   The act of a
3  bank, while a going concern, in receiving money for and on behalf of a customer, and entering the same as a deposit, constitutes the customer a ''depositor,'' which relation is not lost by the subsequent insolvency of the bank.

**MORTGAGES:   Priority—Fraudulent Release of Prior Mortgage by**
4  Agent.   A mortgagee who takes his mortgage as a first mortgage in good-faith reliance on the release *by his agent* of a prior mortgage, does not lose his priority because of the fact that the release was fraudulent in that, prior to the release, the prior mortgage had been assigned, without a recording of the assignment, the knowledge of

the agent of his own dishonesty not being imputable to his principal, the first mortgagee. (See Book of Anno., Vol. 1, Sec. 10105, Anno. 110 *et seq.*)

**JUDGMENT:** Construction—Conflicting Findings. An unappealed decree which is sustainable only on a finding of a certain fact must prevail over a contrary finding of fact in the decree. (See Book of Anno., Vol. 1, Sec. 11567, Anno. 54 *et seq.*)

Headnote 1: 39 Cyc. p. 68. Headnote 2: 7 C. J. pp. 751, 752. Headnote 3: 7 C. J. p. 638. Headnote 4: 27 Cyc. p. 1303. Headnote 5: 34 C. J. p. 507 (Anno.)

Headnote 3: 3 R. C. L. 516.

*Appeal from Harrison District Court.*—EARL PETERS, Judge.

JUNE 21, 1926.

REHEARING DENIED SEPTEMBER 24, 1926.

This is a bank receivership proceeding, involving the distribution of the assets of the bankrupt, the State Savings Bank of Logan, which closed its doors on May 24, 1923, and thereby came into the hands of the banking department of the state. Charles E. Kennedy thereafter presented his application to the receiver, wherein he alleged that the said closed bank had in its possession certain trust funds belonging to the applicant, and prayed that his claim be established as such and preferred accordingly. The Peters' Trust Company also presented its application herein, and joined in the prayer of the applicant Kennedy, with a certain qualification in its own behalf. The receiver having disallowed the preference, the matter was heard before the district court, which established the claim of Kennedy as that of a general creditor only, and without preference. From such order the two applicants appealed. There was also an intervention, which will be referred to in the body of the opinion.—*Affirmed in part; reversed in part.*

*Cochran & Wolfe, T. B. Dysart,* and *Stout, Rose, Wells & Martin,* for appellant Peters Trust Company.

*Kimball, Peterson, Smith & Peterson* and *Tinley, Mitchell, Ross & Mitchell,* for appellant Charles E. Kennedy.

*Ben J. Gibson,* Attorney-general, and *Paul E. Roadifer,* for appellee plaintiff.

*Mayer, Meyer, Austrian & Platt* and *Louis Haller,* for appellee Continental & Commercial National Bank of Chicago.

*Bolter & Murray* and *Robertson & Havens,* for O. B. Walker and other general depositors, and Harrison County, Iowa, and other municipal corporations and officers thereof, claimants and interveners.

EVANS, J.—I. The claim of appellant Kennedy is for approximately $30,000. It arose out of a transaction had in the closing days of the bank, as a going concern. The claim involves the proceeds of a farm mortgage loan, which was in process of negotiation at the time of the closing of the bank.

Stated briefly, the facts leading up thereto were the following: Charles E. Kennedy was the owner of a farm of 325 acres, which he had acquired from his brother, W. R. Kennedy, in the year 1918. One tract of this farm was incumbered by a first mortgage of $14,000 to Annis; the remaining tract was incumbered by a first mortgage of $8,900 to the Federal Land Bank of Omaha; the farm as a whole was incumbered by a junior mortgage for $5,400 to W. R. Kennedy; it was also incumbered by a subsequent mortgage of $10,000 to W. R. Kennedy. The two latter mortgages were subsequently transferred by W. R. Kennedy to the State Savings Bank of Logan. These mortgages all matured on March 1, 1923. Prior to this date, negotiations were begun between Kennedy and the Peters Trust Company of Omaha for a first mortgage loan upon the whole farm for $40,000. This application was later reduced to one for $36,500, as the maximum amount which the trust company would loan upon the farm. The negotiations on Kennedy's part were conducted by the State Savings Bank of Logan, or by Cottrell, cashier, as agent for Kennedy. On May 17th, the negotiations reached the point where Cottrell presented to the trust company an abstract of title, which showed the first three mortgages above named as the only existing incumbrances. On that date, Cottrell delivered to the trust company the note and mortgage of Kennedy for $36,500, and received in person at Omaha from the

1. TRUSTS: constructive trusts: receipt by agent for special purpose.

trust company its check for the net proceeds of the loan, less expenses, with the understanding that he would see that the specified mortgages were properly discharged, so that the mortgage of the trust company should be a first lien upon the farm. The savings bank did thereafter procure the discharge of the $5,400 mortgage, and of none other. Such was the status of the parties at the time of the closing of the bank.

Presumptively, the State Savings Bank had in its hands $36,581 of money which belonged either to Kennedy or to the trust company. The question presented upon this branch of the case is whether Kennedy or the trust company, or both, were entitled to impress a trust upon the funds in the hands of the receiver, to the extent of the amount here stated. In such a case, the burden is upon the applicant to show: (1) That the trust relation existed, whereby the bankrupt received the funds as a trustee; and (2) that such trust funds had come into the hands of the receiver, either in specie or by way of augmentation of the assets so coming into his hands.

The contention for the receiver is that no trust relation is shown, and that, in any event, none of the funds thus received have come in any manner into the hands of the receiver, either by augmentation of the estate or otherwise. As to the first proposition, the argument for the receiver is that the bank was agent for the trust company, and not for Kennedy, and that the trust company intrusted its agent with the custody of its check, and imposed upon it the duty to perform certain conditions, before delivery of the proceeds of the loan to Kennedy. It seems also to be the inference of the argument that, if the bank violated its duty to the trust company, as its principal, by converting the check or otherwise, then the trust company had its recourse at law, perhaps for damages; and that, in any event, it became a mere creditor.

The arguments for the appellees have all been predicated upon the theory that the Savings Bank was the agent of the Trust Company, and not the agent of Kennedy. This argument is untenable here, if for no other reason than that the decree awarded recovery to Kennedy, and not to the Trust Company. The only appellants are Kennedy and the Trust Company, and they make no complaint of this feature of the decree. We must, therefore, accept the decree as an adjudication of that question, in so far

as it becomes material to the decision of other questions.  On the question of the trust relation, and whether the bank received the check as a trustee, it does not seem very material whether it was a trustee for Kennedy or a trustee for the Trust Company.  Concededly, it was the agent of one or the other, and it received the check as such agent.  If for Kennedy, then it belonged to Kennedy; if for the Trust Company, then the title remained in the Trust Company.  We see no escape from saying that the bank received these proceeds as a trustee.

On the other question, the applicant for preference encounters more difficulty.  Did the trust fund come into the hands of the receiver, either by augmentation of the estate or otherwise?

2. BANKS AND BANKING: insolvency: impressing trust on funds. It appears that, on May 18th, the Savings Bank deposited the check in the Stock Yards National Bank of Omaha.  On the same day, it transferred $10,000 thereof from the Stock Yards National Bank of Omaha to the Federal Reserve Bank of Chicago; and on the same day, also, it caused a transfer of $10,000 thereof from said Stock Yards National Bank to the Continental & Commercial National Bank of Chicago.  On the following day, it further transferred $12,000 from the Stock Yards National Bank to the Continental & Commercial National Bank of Chicago.  These transfers substantially exhausted its account with the Stock Yards National Bank.  We think this is an adequate tracing of these funds into the two Chicago banks.  The Savings Bank was heavily indebted to said two banks.  They held much, but insufficient, collateral for such indebtedness, respectively.  The credits which the Savings Bank received by the transfers here noted, were all applied by each respective bank upon the indebtedness due such bank.  The collateral held by each bank was also fully absorbed in liquidating such indebtedness, and none of such collateral was released to the receiver.  The record shows that, after the application of all credits and of all collateral, the Savings Bank was still a debtor to each of said banks.  So that, while the applicants have been able to trace the trust funds into the Chicago banks, they have not been able to trace any benefits therefrom, as coming into the hands of the receiver.  Of all the property coming into the hands of the receiver, none of it was acquired by the bank subsequent to the receipt of the trust fund.

The argument for the applicant at this point is that the

deposit of these funds to the credit of the bank necessarily en-
larged its assets, and that, therefore, the amount coming later
into the hands of the receiver must have been enlarged accord-
ingly. The first part of this argument would be good if the bank
were *solvent*; the latter half of the argument is *non sequitur*.
The tracing of these funds shows that they operated to the
advantage of particular creditors only. If the money had been
in some manner invested in other assets, a different question
would be presented. The money disappeared into a chasm of
indebtedness. It reduced particular indebtedness accordingly,
but it created no asset. So far as the debtor bank was concerned,
it was a dissipation, and not an investment. Whether the bene-
ficial owners of this money could pursue it as against the Chi-
cago banks, is a question not before us. It is sufficient to say
that the receiver was under no duty to pursue it, for the simple
reason that he could have no standing in such pursuit. Whether
the Savings Bank had title to the money, or whether it had no
title thereto, either horn would be a complete defense to a suit
by the receiver. Only the beneficial owner could make the pur-
suit. We must, therefore, hold that the trust fund has not been
traced, either directly or indirectly, into the hands of the re-
ceiver.

II.    The question remains, on this branch of the case,
whether the trial court properly refused to establish the claim as
a deposit. Kennedy was a regular customer of the bank. It was
3. BANKS AND ·        acting as his agent in this transaction. It pur-
BANKING: de-          ported to receive the money for him, and
posits: depositor
defined.              placed the same to his credit as a depositor.
Having done so, it was in no position to say that he was not
entitled to the rights of a depositor. So far as it was concerned,
it fixed the status of Kennedy as a depositor while it was in legal
control of its business as a going concern. It would be inequi-
table to say that that status was lost by the subsequent receiver-
ship. We think the applicant should be allowed the status of a
depositor.

III.    There is another branch to the case. This involves an
intervention by the Continental & Commercial National Bank of
Chicago. We have already referred to the fact that the junior

4. MORTGAGES:  mortgages for $5,400 and $10,000, respectively,
priority; fraud-  given to W. R. Kennedy, were acquired by the
ulent release of
prior mortgage  State Savings Bank of Logan. It further ap-
by agent.
pears that in 1921 the Savings Bank transferred
the $10,000 note and mortgage to the Continental & Commercial
National Bank of Chicago, which has owned the same ever since.
The transfer of the mortgage, however, was never made to ap-
pear of record. On April 28, 1923, the Savings Bank caused its
own assignment of the $10,000 mortgage to be put of record,
and then and there entered a release of the mortgage on the
record thereof. The abstract of title which it presented to the
Peters Trust Company on May 17, 1923, showed such release of
the $10,000 mortgage, and the Peters Trust Company acted in
reliance upon such abstract in delivering its check to Cottrell.
The reason actuating the Savings Bank in such manipulation of
the record was to reduce the apparent mortgage liens upon the
farm to a sum less than the amount of the proposed loan. It
took from Kennedy another note and mortgage for $10,000 in
apparent renewal. It placed such mortgage upon the record,
· and immediately released the same, in order to give priority to
the mortgage of the Peters Trust Company, and with intent to
record the same later. The explanation made to Kennedy was
that it would carry the balance of his indebtedness as a second
mortgage. This act by the Savings Bank, through Cottrell, was
wholly unauthorized and essentially fraudulent, both as to the
Continental & Commercial National Bank and as to the Peters
Trust Company. It was even so as to Kennedy, if it had resulted
in any injury to him. On the day set for trial of the application
of Kennedy and the Peters Trust Company, the Continental &
Commercial National Bank intervened by petition. It set forth
the facts here stated. It in effect joined with the applicants in
the prayer for the establishment of a trust, but prayed that it be
permitted to share in the distribution of the trust funds, and
that, if it were not so permitted, its mortgage lien be reinstated.
It did not directly challenge any claim by the Peters Trust
Company. The Peters Trust Company challenged the right of
this bank to intervene; pleaded its reliance upon the record of
the release of intervener's mortgage, and want of notice; pleaded
that the intervener had received a large part of the trust funds,
and should be held to apply the same upon its $10,000 mort-

gage; and prayed that, in event of a restoration of the intervener's mortgage lien, it should be deemed junior to the lien of the Peters Trust Company. The decree of the trial court reinstated the mortgage lien of the intervener, and established the same as superior to the lien of the Peters Trust Company. The finding of fact in the decree, upon which the superiority of intervener's lien was predicated, was that the Savings Bank was the agent of the Peters Trust Company in the receipt of the trust funds, and that the knowledge of such agent was imputed to the Peters Trust Company. It will be noted that the issue determined upon this branch of the case is quite foreign to the receivership proceedings. The intervention for the purpose of asking proper distribution of the trust fund was proper enough. But the question of priority of these two mortgage liens could better have been settled in a separate proceeding. The result of trying the two matters together is that we have before us a decree that is inconsistent in its parts. The application for a loan, which was signed by Kennedy, designated the State Savings Bank of Logan as agent to receive the proceeds. The awarding of recovery to Kennedy for the proceeds of the loan was an adjudication that they belonged to him. No one appeals from this part of the decree. The decree included a finding of fact, as already noted, that the Savings Bank was the agent of the Peters Trust Company. This finding of fact is challenged by the appellants.

The appellants were entitled to a consistent decree. As between a mere finding of fact and the ultimate adjudication, the latter must control, unless it be reversed. In the absence of any appeal from that part of the decree, we must assume here that the Savings Bank was the agent of Kennedy, and not of the Peters Trust Company. Even if it were assumed that the Savings Bank was the agent of both parties, yet its agency for the Peters Trust Company could be deemed only a very limited and specific one. Nor could it be held to have any relation whatever to the $10,000 mortgage. Moreover, the act of release of the mortgage was a fraudulent one on the part of the bank official, and was intended to deceive the Peters Trust Company. It is well settled in such cases that knowledge by an agent of his own fraud or criminality will not be imputed to his principal.

5. JUDGMENT: construction: conflicting findings.

The distinguished counsel for the Continental & Commercial National Bank have lightened our labors herein by the frank concession that they have no right to priority over the Peters Trust Company, unless such right can be predicated upon the knowledge of the Savings Bank official, as the agent of the Peters Trust Company. We are very clear that the ground is not tenable. *Hummel v. Bank of Monroe*, 75 Iowa 689; *Smith v. Iowa St. L. S. Ins. Co.*, 195 Iowa 250.

As between the two mortgagees, the Peters Trust Company is entitled to priority of lien.

So far as Kennedy is concerned, he was charged with a duty of discovery of the owner of the note before satisfying the same. The note was negotiable, and he was bound to know that it could pass into the hands of innocent purchasers, and that he could not properly pay the same to anyone other than the actual holder or his authorized agent. Moreover, he has not in fact suffered injury by the transaction. He gave a new note and mortgage, it is true, to the Savings Bank, but it was not negotiated to other parties, and is now within the control of the receiver. He has a complete defense thereto.

On the first branch of the case, the order of the district court refusing a trust preference for want of tracing the trust funds into the hands of the receiver is affirmed. That part of the order which denied Kennedy the status of a depositor is reversed. On the second branch of the case, that part of the decree which awarded priority of mortgage lien to the Continental & Commercial National Bank is reversed. In other respects, the decree is affirmed.—*Affirmed in part; reversed in part.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.