ROBERT L. LEACH, State Superintendent of Banking, Appellee, v. IOWA STATE SAVINGS BANK OF SIOUX CITY et al., Appellees; L. A. ANDREW, Receiver, Appellant.

**BANKS AND BANKING:** Insolvency—Preference—Draft and Check
1  **Holders.** The purchaser of drafts or cashier's checks simply buys the bank's credit, with resulting consequence that, if the drawer bank becomes insolvent, no right to preference in payment of such drafts or checks exists.

**BANKS AND BANKING:** Insolvency—Preference—Draft Remittance—
2  **Effect.** Trust funds in a bank lose their trust character and become general assets of the bank when the bank, under authority from the owner of the trust funds, remits its draft for the amount of said trust funds.

**BANKS AND BANKING:** Insolvency—Preference—Unauthorized
3  **Draft or Check Remittance—Effect.** Trust funds in the possession of a bank do not lose their trust character by the unauthorized issuance by the bank of drafts or cashier's checks to the trust owner for the amount of the fund.

**BANKS AND BANKING:** Insolvency—Preference—Dissipation of
4  **Trust Funds.** Proof that a bank collected certain checks as agent for the holder thereof, but that in so doing the entire amount of the collection was applied in the payment of the *general obligations of the collecting bank,* conclusively negatives any augmentation of the assets of the collecting bank.

**BANKS AND BANKING:** Insolvency—Preference—Non-change in
5  **Trust Funds.** The unauthorized act of a bank in drawing in favor of the owner of trust funds in its possession a cashier's check for the amount of such funds, and its act in placing said check among the papers of said owner, cannot change the trust character of said funds.

**BANKS AND BANKING:** Liquidation—Equitable Trust—Presumption
6, 8 —Prorating Intermingled Trust Funds. Upon the establishment of a trust in *cash* funds in the hands of an insolvent bank, the rebuttable presumption is not that the bank preserved the trust in the *general mass* of bank assets, but that the bank preserved the trust in the smallest *cash* bank balance existing between the creation of the trust and the time of enforcing the trust; and if two or more like trusts be established, the trust owners must prorate such cash balance, in case it is insufficient to pay all in full.

**APPEAL AND ERROR:** Review—Scope and Extent—Non-parties to
7  **Appeal.** The appellate court, in adjusting and determining claims

for preferential payment of trust funds in the settlement of the estate of an insolvent, has no power to make a determination which will prejudice the rights of other parties who have been granted preference in payment and who are not parties to the appeal.

Headnote 1: 7 C. J. p. 751. Headnote 2: 7 C. J. p. 751. Headnote 3: 7 C. J. p. 751. Headnote 4: 7 C. J. p. 752. Headnote 5: 7 C. J. p. 751. Headnotes 6, 8: 7 C. J. p. 751. Headnote 7: 4 C. J. p. 1114.

Headnotes 6, 8: 3 R. C. L. 554.

*Appeal from Woodbury District Court.*—C. C. HAMILTON, Judge.

MARCH 15, 1927.

SUPPLEMENTAL OPINION OCTOBER 18, 1927.

The receiver of an insolvent bank appeals from allowance of preferred claims.—*As to one claim affirmed; as to others reversed.*

*John Fletcher*, Attorney-general, *O. H. Montzheimer*, and *D. G. Mullan*, for appellant.

*Hughes, Taylor & O'Brien, Corbett & Corbett, Milchrist, Jepson, Pitkin, Marshall & Jepson, John F. Power, Kindig, McGill, Stewart & Hatfield, Pendleton & Browning, Parrish, Cohen, Guthrie & Watters*, and *Burgess & Gill*, for appellees.

MORLING, J.—We are grateful to counsel for the concise and systematic manner in which they have presented what would otherwise have been a very formidable record.

The Iowa State Savings Bank finally closed its doors on the evening of April 17, 1924. A receiver was appointed. Some 25 or 26 claims for preference, aggregating $41,870.86, were allowed, 9 of which are before us on this appeal.

I. The claims of the Massachusetts Bonding & Insurance Company, Hal Summers, and F. A. Martin are founded on drafts and cashiers' checks purchased by claimants. The instruments were presented for payment after the bank closed, and payment refused. These claims are ruled by *Leach v. Mechanics Sav.*

1. BANKS AND BANKING: insolvency: preference: draft and check holders.

*Bank,* 202 Iowa 899; *Leach v. Iowa St. Sav. Bank* (Iowa), 211 N. W. 515 (not officially reported); *Andrew v. Chicago, M. & St. P. R. Co.* (Iowa), 211 N. W. 515 (not officially reported); *Leach v. Exchange St. Bank,* 203 Iowa 790; *Leach v. Iowa St. Sav. Bank,* 202 Iowa 894; *Leach v. Battle Creek Sav. Bank,* 202 Iowa 871; *Leach v. Battle Creek Sav. Bank,* 203 Iowa 507; *Leach v. Citizens' State Bank,* 203 Iowa 782; *Leach v. Citizens St. Bank,* 202 Iowa 879; *Leach v. Battle Creek Sav. Bank,* 202 Iowa 875; *Danbury St. Bank v. Leach,* 201 Iowa 321; *Leach v. Iowa St. Sav. Bank,* 202 Iowa 95. Preference for these claims should have been denied, and the order allowing them must be reversed.

II. The Bankers Trust Company placed travelers' checks with the defendant bank for sale, with instructions to remit to claimant, immediately on sale, "the full face plus one fourth of

2. BANKS AND BANKING: insolvency: preference: draft remittance: effect.

one per cent New York exchange or any exchange upon a central reserve city." The defendant bank sold a number of the checks, and remitted by draft upon its Chicago correspondent. The draft was not presented until after the defendant bank had closed its doors. Payment was consequently refused. The defendant was authorized to make remittance by Chicago draft; and under the authorities above cited, claim for preference should have been disallowed. Allowance thereof must, therefore, be reversed.

III. Claim of Mrs. O. C. Servis. The finding of the referee on this claim is as follows:

"The basis of this claim is for interest collected by the bank and belonging to this claimant. The claimant had purchased from the bank various real estate mortgages, and had

3. BANKS AND BANKING: insolvency: preference: unauthorized draft or check remittance: effect.

permitted the bank to collect the interest thereon and hold the same for the account of the claimant. These transactions had occurred during a number of years prior to the time of the closing of the bank. Mrs. Servis or her agent, after the collection of interest by the bank, would call at the bank and receive the payment of the interest, delivering coupons if the interest was represented by interest coupons. Collections so made over the period in which these transactions occurred amounted to considerable sums. Various collections were charged in the real estate loan account and were paid with

checks out drawn by the bank upon that account, and delivered to the claimant. In many instances cashier's checks were written, at the time or soon after the interest items were paid, and held at the bank until claimants called for them. The bank either had direct or implied authority from this claimant to make these particular collections of interest.

"Conclusions of Law. Under the recited facts and the record, it appears that no trust relation existed between this claimant and the bank, and that the claim is not entitled to preference. It is recommended that the claim be allowed as a general claim only."

The evidence is meager, but we are of the opinion that no such course of business between the bank and Mrs. Servis is shown as to raise any inference that she agreed to accept the bank's credit or liability, as evidenced by its cashier's checks, either as a substitute for the interest liability of the mortgagors or for the money paid by them for the interest. The bank was claimant's agent to make the collections. Its duty, in the absence of a sufficient showing to the contrary, was to collect the money and pay it over to claimant. We think the evidence is insufficient to show that she waived the bank's duty to pay over the money, or that she agreed that moneys collected for her might be mingled with the bank's assets and that she would accept the bank's credit for it. For these reasons and those later set out in connection with the claims of H. H. Dwight and others, the preference should be allowed, but prorated.

IV. State Bank of Omaha claim. On April 15, 1924, the State Bank of Omaha forwarded to the defendant bank for collection checks aggregating $5,015.59. The defendant was directed to collect the checks and remit the proceeds. The checks were all drawn on other banks. They were received by the defendant bank on April 16, 1924, and presented through the local clearing house. The balance of the clearings on that date was in favor of the defendant bank to the amount of $2,600, for which amount a draft was issued to the defendant bank. The defendant did not receive cash. It received only the $2,600 draft, and sent it to the National City Bank of Chicago for credit. Defendant thereupon remitted to the claimant its own

4. BANKS AND BANKING: insolvency: preference: dissipation of trust funds.

draft on the National City Bank for the amount of the collection, $5,015.59.

On April 16, 1924, the Omaha bank forwarded to defendant for collection and remittance checks on other banks, aggregating $7,731.56. These were received on the 17th and presented through the clearing house. The balance on the clearings that day was against the defendant, so that it actually received nothing in the form of cash or draft for the checks. Defendant remitted to the Omaha bank its draft on the National City Bank for the amount of the checks, $7,731.56. The defendant's balance sheet for April 16, 1924, showed a credit balance in Chicago of $1,939.50, and for April 17, 1924, a debit balance or overdraft of $12,174.51. The books of the Chicago bank for that date showed a credit balance in favor of the defendant bank of $17,893.09, because drafts drawn by the defendant had not yet been presented. The defendant bank was owing the Chicago bank over $100,000 on bills payable. The Chicago bank applied the book credit of $17,893.09 on this indebtedness, and refused payment of the drafts issued to claimant and the other drafts in transit. The defendant bank had no authority to remit to the Omaha bank by the draft, and the receiver does not deny the relationship of principal and agent between the Omaha bank and defendant. The error assigned is in finding that the proceeds of the collections have come into the hands of the receiver, and that the receiver's assets were thereby augmented. Claimant relies on *Messenger v. Carroll Tr. & Sav. Bank,* 193 Iowa 608. In that case claimant had forwarded to defendant bank for collection sight draft on defendant's customer. The customer had a credit balance on checking account of ample amount, and gave to defendant its check thereon for the amount of the sight draft. The bank had ample cash on hand. The amount of the sight draft was remitted to claimant in the form of Chicago exchange. This was held to be the equivalent of the payment of cash on the check and the payment of the cash on the sight draft. To apply the doctrine of that case to this, we would have to hold that what was done here was the equivalent of the presentation by defendant of the checks owned by claimant, to the banks on which they were drawn, the receipt of the money thereon by defendant, the placing of it in defendant's till, the increase thereby of defendant's cash assets, and

remittance in Chicago exchange. The proven fact is, however, that claimant's particular property was specifically used in paying the defendant's debts to its depositors and to the National City Bank. The checks owned by claimant were not drawn on defendant.

The checks owned by the Omaha bank and remitted to the defendant for collection were used in the payment of checks held by other banks and drawn on the defendant bank, except as to $2,600. The $2,600 was received by the defendant in the form of a draft, and that specific draft was remitted to Chicago and was applied to the payment of the indebtedness of the defendant bank to the Chicago bank. The defendant got no cash for the checks received from the claimant. The only fund that it received was the $2,600, and that did not become a part of defendant's cash or of any fund that has come into the hands of the receiver. The claimant bank has no standing to claim a preference merely as a creditor. It makes no difference that its claim as a creditor is founded upon fraud, conversion, or breach of trust. The claimant has no standing other than as the owner of property which came into the possession of the defendant bank, and thence into the possession of its receiver. If the property of the Omaha bank did not find its way, either specifically or through substitution of other property, into the possession of the receiver, the claim to a preference cannot be sustained. To obtain a preference, the claimant "must show, by presumption of law or otherwise, that his fund has been preserved in the hands of the assignee, as an increase of the assets of the estate, from which it may be taken without impairment of the rights of general creditors." *Bradley v. Chesebrough,* 111 Iowa 126. See, also, *Farnsworth v. Muscatine Prod. & P. I. Co.,* 177 Iowa 21; *Hanson v. Roush,* 139 Iowa 58; *First St. Bank v. Oelke,* 149 Iowa 662; *Stilson v. First St. Bank,* 152 Iowa 724; *Hudspeth v. Union Tr. & Sav. Bank,* 197 Iowa 913.

Payment of debts is not, of itself, such an increase of assets. For instance, if the deposits amounted to $500,000, and the assets available for their payment to $250,000, the depositors would get 50 per cent. If $50,000 of the assets were used to pay checks or deposits to that amount in full, while the deposits would be reduced to $450,000, the assets available for their payment would be reduced to $200,000, and the remain-

ing depositors would get only 44 per cent plus.  If the $50,000 were taken to pay claims other than those of depositors, then the depositors, though, under the law, preferred creditors, would be postponed, to that extent, to other creditors, and get only 40 per cent.  The evidence shows affirmatively that the plaintiff's property did not augment the assets in the possession of the bank, and did not come into the possession of the receiver.  Idem; *Leach v. State Sav. Bank of Logan,* 202 Iowa 265; *Jones v. Chesebrough,* 105 Iowa 303; *Board of Fire & Water Com. v. Wilkinson,* 119 Mich. 655 (78 N. W. 893); *City of St. Paul v. Seymour,* 71 Minn. 303 (74 N. W. 136); *Slater v. Oriental Mills,* 18 R. I. 352 (27 Atl. 443); *Bank Commissioners v. Security Tr. Co.,* 70 N. H. 536 (49 Atl. 113).  The claim of the Omaha State Bank for a preference should have been disallowed, and the order sustaining it must be reversed.  This conclusion makes it unnecessary to discuss claimant's appeal from the nonallowance of interest.

V.   Claims of H. H. Dwight, Metropolitan Life Insurance Company, and Mechanics & Metals National Bank.  These may be considered together.  Dwight's claim is similar to that of Mrs. Servis.  The evidence fails to show any authority, express or implied, to the bank to make remittance by cashier's checks or drafts.  The record is that Dwight was not a depositor.

5. BANKS AND BANKING: insolvency: preference: nonchange in trust funds.

His instructions to the bank were to remit to him the interest as it was collected.  He was in Florida.  The bank made out its cashier's checks for Dwight's interest, but without authority from him, and filed them with his securities.  He found the checks with his papers when he got them from the bank after the bank had closed.

The Metropolitan Life Insurance Company placed funds with defendant to be paid out for specified first mortgage loans then being negotiated, when designated conditions were complied with.  The Metropolitan Life Insurance Company did not carry a general deposit account with defendant.  The money was placed to the credit of the real estate department of the bank, to be paid out in accordance with the conditions named.  It was mingled with the other moneys of

6. BANKS AND BANKING: liquidation: equitable trust: presumption: prorating intermingled trust funds.

the bank. This money as a whole was drawn on in the ordinary course of the bank's business.

The Mechanics & Metals National Bank sent to defendant notes for collection. Defendant made collections, and issued and retained in its files cashier's checks for the amount of the proceeds. In the Dwight case, we must hold that the collections were received as agent, and that defendant had no authority to substitute its obligation for the money which it held as agent. In the Metropolitan Life Insurance Company and Mechanics & Metals National Bank cases, the agency or trust relationship is conceded. In all three cases, the question is whether there was an augmentation of the funds in the possession of the bank which came into the hands of the receiver, and if so, the extent of such augmentation. In each case, the funds are treated, in the record and arguments, as money received by the defendant bank. As the case is presented, we must treat such funds as having become a part of the cash balances in the possession of the bank. There is no evidence that they were transmuted into any other form of property, and we cannot presume that they were. We cannot presume, for instance, that they were remitted to the National City Bank, and there dissipated in the appropriation of the credit balance to the payment of defendant's drafts and bills payable. Defendant carried accounts with numerous correspondents, the balances in which fluctuated greatly, and we cannot presume that claimants' funds became a part of those balances. The only finding that can be made is that the funds, as stated, became a part of the cash balance on hand. The case is one of an acknowledged trust relationship. In such case, the burden of proof, or more correctly, the burden of going on with evidence from this point to follow the funds and show dissipation, is with the receiver. *Hudspeth v. Union Tr. & Sav. Bank,* 197 Iowa 913; *Murray v. North Liberty Sav. Bank,* 196 Iowa 729; *Lusk Dev. & Imp. Co. v. Günther,* 32 Wyo. 294 (232 Pac. 518). The cash on hand when the bank closed is shown to have amounted to $12,136.94. The record shows the allowance of a large number 7. APPEAL AND ERROR: review: scope and extent: non-parties to appeal. of preferences, the greater number of which are not before us for review. We can make no determination that will prejudice the rights of the holders of those claims. As to the three claims under con-

sideration and the Servis claim, however, the preference should
be allowed pro rata against the amount of cash that came into
the hands of the receiver, without prejudice to the rights of
claimants who have not been brought into this court by appeal.
*Hewitt v. Hayes*, 205 Mass. 356 (137 Am. St. 448, 91 N. E.
332, 334).

With this modification, the allowance of preferences to H.
H. Dwight, Mechanics & Metals National Bank, and Metropoli-
tan Life Insurance Company is affirmed.   The case is remanded
for further proceedings not inconsistent with this opinion.—
*In part affirmed; in part reversed and remanded.*

EVANS, C. J., and DE GRAFF and ALBERT, JJ., concur.

## SUPPLEMENTAL OPINION.

MORLING, J.—The Mechanics & Metals National Bank, the
Metropolitan Life Insurance Company, and the State Bank of
Omaha have filed petitions for rehearing.   The first two con-
tend that the preferences allowed to them
should be established against all of the assets
coming into the possession of the receiver, in-
stead of being limited to a pro-rata distribution
of the cash.   They and the State Bank of
Omaha argue that it will be presumed that the trust fund was
present in the mass of the bank's assets, under the "augmen-
tation theory," and that the receiver must overcome this pre-
sumption by clear and satisfactory proof that the bank had
lost or dissipated the fund.

8. BANKS AND
BANKING: liqui-
dation: equitable
trust: presump-
tion: prorating
intermingled
trust funds.

Petitioners are in error in their assertion that the aug-
mentation theory in any such sense prevails in this state.   In
*Davenport Plow Co. v. Lamp*, 80 Iowa 722, preference was
given for money used by the defunct company in its business
and in the payment of its debts.   In *Independent Dist. v. King*,
80 Iowa 497, 503, it was said that, money having been traced
into the estate impressed with the character of a trust fund, the
burden was upon the assignee "to show that it contributed
nothing to the estate which he acquired by virtue of the assign-
ment * * * ."   This holding is based on *McLeod v. Evans*, 66
Wis. 401, 409 (28 N. W. 173, 214).   *McLeod v. Evans* was
overruled in *Nonotuck Silk Co. v. Flanders*, 87 Wis. 237 (58

N. W. 383). In *Bradley v. Chesebrough,* 111 Iowa 126, the previous cases of *Davenport Plow Co. v. Lamp* and *Independent Dist. v. King* were reviewed and limited, and the doctrine was laid down:

"That plaintiff was a trust creditor does not, of itself, entitle him to preference over general creditors. To obtain that right, he must show, by presumption of law or otherwise, that his fund has been preserved in the hands of the assignee, as an increase of the assets of the estate, from which it may be taken without impairment of the rights of general creditors."

This court has since steadily adhered to this doctrine. Cases post. Payment of debts is not an augmentation of assets. *Leach v. State Sav. Bank,* 202 Iowa 265 (quoted post); *Birch v. International St. Bank* (S. D.), 208 N. W. 167; *In re Seven Corners Bank,* 58 Minn. 5 (59 N. W. 633); *City of St. Paul v. Seymour,* 71 Minn. 303 (74 N. W. 136); *Willoughby v. Weinberger,* 15 Okla. 226 (79 Pac. 777); *Empire St. Sur. Co. v. Carroll County,* 114 C. C. A. 435 (194 Fed. 593). In *First St. Bank v. Oelke,* 149 Iowa 662, 667, it is said:

"It is the settled rule of our cases that a preference will not be allowed unless it be found that the fund has increased the present assets of the bank, and that it may be taken therefrom without impairment of the rights of creditors."

Confusion and misunderstanding have arisen probably because of the entanglement of the ultimate fact, which must be made to appear affirmatively, with the method by which that fact may be shown. The ultimate fact that must be shown is that the "fund has been preserved in the hands of the assignee, as an increase of the assets of the estate, from which it may be taken without impairment of the rights of general creditors." Cases above; *Hudspeth v. Union Tr. & Sav. Bank,* 197 Iowa 913; *City of New Hampton v. Leach,* 201 Iowa 316; *Murray v. North Liberty Sav. Bank,* 196 Iowa 729; *Whitcomb v. Carpenter,* 134 Iowa 227; *Seeley v. Seeley-Howe-Le Van Co.,* 128 Iowa 294. So-called claims of preference of the character of those involved in this case may not be allowed merely as for a liability or debt of the insolvent's. A liability for trust property misappropriated or lost is not entitled to a preference. The right to preference consists in the right of property in assets in the possession of the receiver, but equitably belonging to

claimant, and not belonging to the bank. The claimant is in the attitude of pursuing his own property. He may pursue it into different forms of property, if it is shown that it has been converted into such. But his right ultimately is to recover his own property, not to recover a debt or liability for his property. The principle is that the bank is not entitled to use property belonging to another to pay its debts, and its creditors are not entitled to resort to such property for satisfaction. *Officer v. Officer*, 120 Iowa 389, 393, 395; *Farnsworth v. Muscatine Prod. & P. I. Co.*, 177 Iowa 21.

" 'The guiding principle is that a trustee cannot assert a title of his own to trust property. If he destroys a trust fund by dissipating it altogether, there remains nothing to be the subject of the trust. But, so long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust.' " *In re Hallett's Estate*, 13 Ch. Div. 696, quoted in *Nonotuck Silk Co. v. Flanders*, 87 Wis. 237 (58 N. W. 383, 385).

As said in *Stilson v. First St. Bank*, 152 Iowa 724, 730:

"Claimant's claim of preference does not present a controversy with the bank, but with the other creditors of the bank. The right of preference as against other creditors is not an equity. When such preference is awarded, it is awarded strictly as a right of property, and not as a mere right to equitable relief against other creditors."

It is said in *Slater v. Oriental Mills*, 18 R. I. 352 (27 Atl. 443):

" * * * the illustration may be used of a debtor mingling trust funds with his own in a chest or bag. Though the particular money cannot be identified, the amount is swelled just so much, and the amount added belongs to the *cestui que trust*. But in the latter case there is no swelling of the estate, for the money is spent and gone; or, as respondent's counsel pertinently suggests, 'Knight Bruce's chest—Jessel's bag—is empty.' Shall we, therefore, order a like amount to be taken out of some other chest or bag, or out of the debtor's general estate? Suppose the general estate consists only of mills and machinery acquired long before the complainants' money was appropriated. Upon what principle could that property be taken to reimburse them? But the complainants say: 'Our money has been mis-

appropriated by the debtor without our consent and without our fault. Why should we not be reimbursed out of his estate?' Undoubtedly is it right that everyone should have his own; but, when a claimant's property cannot be found, this same principle prevents the taking of property which equitably belongs to creditors of the trustee, to make it up. The creditors have done no wrongful act, and should not be called upon, in any way, to atone for the misconduct of their debtor. It is an ordinary case of misfortune on the part of claimants, whose confidence in a trustee or agent has been abused.''

By our statute the depositor is given a preference in the distribution of the proceeds of the property of the bank. The depositors are entitled to have the bank's property devoted first to the payment of depositors. They are not entitled to have property not belonging to the bank applied to such payment. Conversely, the owner of property which the bank has taken and misappropriated is not entitled to reimbursement out of property which belonged to the bank, and which the law gives to the depositors. The controversy is with the depositors. *Stilson v. First St. Bank,* 152 Iowa 724, 730 (quoted supra). It was said in *Farnsworth v. Muscatine Prod. & P. I. Co.,* 177 Iowa 21, 30:

''It follows, therefore, that the burden is on the one claiming preference to point out the fund into which his property has gone, show that it exists, passed into the hands of the receiver, either in its original form or as substituted in other property, and that, in taking out his property, he leaves the property of the insolvent concern intact for general creditors.''

The ultimate fact of non-dissipation may be shown by actual proof, or *prima facie* by presumption.

Property in the possession of and ostensibly belonging to the bank is presumed to be its own. Such property may be shown, however, to be the property of claimant, and to have come into the possession of the bank under circumstances which did not give the bank title to it. When it is so shown to have come into the possession of the bank, without more, we allow to claimant the benefit of the presumption that the bank did not dispose of the property which it had no right to dispose of, and has not lost or dissipated it, but transmitted it, with the other assets in its possession into the possession of the receiver. This

presumption has its limitations, which need not be now particularly referred to. *First St. Bank v. Oelke,* 149 Iowa 662; *Stilson v. First St. Bank,* 152 Iowa 724; *Farnsworth v. Muscatine Prod. & P. I. Co.,* 177 Iowa 30; *Jewel v. Clay,* 107 Iowa 52; *Bradley v. Chesebrough,* 111 Iowa 126; *Hanson v. Roush,* 139 Iowa 58; *Hudspeth v. Union Tr. & Sav. Bank,* 197 Iowa 913.

This presumption has been spoken of as "a presumption of law." It is not a presumption of law, but a rebuttable presumption of fact. *Stilson v. First St. Bank,* 152 Iowa 724, 727; *Hudspeth v. Union Tr. & Sav. Bank,* 197 Iowa 913.

In the case before us, both on original submission and in the petitions for rehearing, the collections for the Mechanics & Metals National Bank and the Metropolitan Life Insurance Company are treated as having been made in the form in which the collecting bank would have authority to make them,—that is, in money. It is shown, therefore, that moneys belonging to claimants came into the possession of the bank, and were not paid over by the bank to claimants. From these facts, standing by themselves, a presumption would arise that the moneys of the claimants passed with the assets in the bank into the possession of the receiver. It is not presumed that the money was converted by the bank into bills receivable, or into a deposit account with another bank, or into any other form of property. If it appears that the claimant's money was intermingled with the bank's money, the trust attached to the commingled fund. When by withdrawals the commingled fund has been diminished below the amount of the trust fund, the trust fund is, to the extent of such diminution, dissipated. As said in the *Slater* case, 18 R. I. 352 (27 Atl. 443), supra, "The money is spent and gone." The trust for cash received by the bank may be established against the cash found in the possession of the bank when the receiver takes charge, but only to the extent of the lowest amount of cash held by the bank between the time of the receipt of the trust funds and the time of enforcing the trust. *Board of Commissioners v. Strawn,* 157 Fed. 49; *Schuyler v. Littlefield,* 232 U. S. 707. This rule has been often recognized in this court. In *Whitcomb v. Carpenter,* 134 Iowa 227, 231, it was said, through Justice Weaver:

"The money was mingled with the funds of the bank, which were certainly increased by that amount, and the trust char-

acter of the sum so appropriated operates to create a lien for its amount upon the entire fund with which it was mingled; and when thereafter the fund is diminished by withdrawals therefrom by the trustee, he is presumed to have withdrawn his own moneys, and so long as the balance left on hand is equal to or greater than the trust fund, the right of the *cestui que trust* to have it applied to the payment of his claim. remains unimpaired.''

It was recognized in *Leach v. Iowa St. Bank*, 202 Iowa 887, 892, where it is said:

''So far as appears, upon this record, the fund to the credit of the Iowa State Bank in its correspondent bank was never depleted to a point below the proceeds of these bonds.''

It was recognized in *In re Insolvency of Farmers & Merch. Sav. Bank*, 202 Iowa 859, 863, where it is said:

''It follows that either the bonds in the possession of the receiver must be retained. by him, because not specifically identified, and be used for the purpose of paying general creditors, or they must be prorated among the respective claimants. It would be manifestly inequitable and unjust to deprive the claimants thereof, and thereby swell the assets of the bank, which never acquired title thereto, to the advantage of creditors. We have no hesitation in holding that the bonds must be returned to the claimants, to be prorated among them, or sold by the receiver, and the proceeds thus used.''

In *Leach v. State Sav. Bank*, 202 Iowa 265, 269, it is said:

''The argument for the applicant at this point is that the deposit of these funds to the credit of the bank necessarily enlarged its assets, and that, therefore, the amount coming later into the hands of the receiver must have been enlarged accordingly. The first part of this argument would be good, if the bank were *solvent*; the latter half of the argument is *non sequitur*. The tracing of these funds shows that they operated to the advantage of particular creditors only. .If the money had been in some manner invested in other assets, a different question would be presented. The money disappeared into a chasm of indebtedness. It reduced particular indebtedness accordingly, but it created no asset. So far as the debtor bank was concerned, it was a dissipation, and not an investment.''

The general principle is well expressed in *County of Grand*

*Forks v. Baird,* 54 N. D. 315, 320 (209 N. W. 782, 783), where it is said:

"The principle is that the trustee cannot assert a title of his own to trust property. In applying this principle to banks holding public funds in trust, and not in the capacity of debtors, the conversion by the bank of the cash assets, from time to time, into the various forms of investment, and their employment in the ordinary business of the bank, must be held to involve the cash to which it has title as owner, and not that which it holds in trust; for it is at all times precluded from asserting its ownership of the amount so held. From this it follows that the *cestui* may, at any given time, fasten the trust upon the cash assets available, to the extent of the minimum on hand between the origin of the trust relation and the times of its enforcement. This principle has never, in our opinion, been successfully controverted since Sir George Jessel, Master of the Rolls, gave utterance to his remarkably simple, yet compelling, illustration."

As said in *Empire St. Sur. Co. v. Carroll County,* 114 C. C. A. 435, 447 (194 Fed. 593, 605), quoted in *Poisson v. Williams,* 15 Fed. (2d Series) 582, 584:

"Proof that a trustee mingled trust funds with his own, and made payments out of the common fund, is a sufficient identification of the remainder of that fund coming to the hands of the receiver, not exceeding the smallest amount the fund contained subsequent to the commingling * * * [citing cases], as trust property; because the legal presumption is that he regarded the law, and neither paid out nor invested in other property the trust fund, but kept it sacred."

This rule is likewise subject to the qualification that the receptacle in which the trust money is kept, or the bank account in which it is deposited, may be the receptacle or bank account kept for the purposes of the trust; that the withdrawals may be shown to be withdrawals of trust funds, and the replacements therein for the purpose of replacing the trust moneys wrongfully withdrawn therefrom. See *Leach v. Iowa St. Bank,* 202 Iowa 887; *Cable v. Iowa St. Sav. Bank,* 197 Iowa 393, 401; *Baker v. New York Nat. Exch. Bank,* 100 N. Y. 31 (2 N. E. 452); *Cohnfield v. Tanenbaum,* 176 N. Y. 126 (68 N.

E. 141, 98 Am. St. 653) ; *Garst v. Canfield,* 44 R. I. 220 (116 Atl. 482).

*Andrew v. Security Sav. Bank,* 203 Iowa 546, is cited as holding contrary to our original opinion herein. In that case an express trust was created, and recognized as existing throughout. It was created by a promissory note, which went into the bills receivable, and was to be kept invested in mortgages. The burden of showing dissipation was held to be on the receiver. The court was divided in opinion on the fact question. The majority found themselves unable to hold that the facts were such as to show dissipation. If it had certainly appeared that all the trust fund had been transmuted into cash, a different question would have been presented.

The petitions are overruled.